TANNETTE GATES
5510 Owensmouth Avenue
Unit 122
Woodland Hills, CA 91367
Telephone: (818) 443-8769
tgatesons@gmail.com

In Pro Se Plaintiff

**FILED**

JUN 0 5 2026

CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY:                    Deputy Clerk

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re:<br><br>TANNETTE GATES,<br><br>Debtor.<br><br>---<br><br>TANNETTE GATES, an individual,<br><br>Plaintiff,<br><br>v.<br><br>WARNER CENTER CONDOMINIUMS, a California nonprofit mutual benefit corporation; ROSS MORGAN & COMPANY, INC., a California corporation; BEAUMONT TASHJIAN, [form of business entity currently unknown to Plaintiff]; WITKIN & NEAL, INC., a California corporation; PROFESSIONAL LIEN SERVICES, LLC, a California limited liability company; and DOES 1 through 10, inclusive,<br><br>Defendants. | Adversary No.: _____<br><br>Chapter 7 Case No.: 1:25-bk-11235-VK<br><br>Assigned to Hon. Victoria S. Kaufman<br><br>**COMPLAINT FOR:**<br><br>**(1) DECLARATORY JUDGMENT THAT LIEN IS VOID [11 U.S.C. § 506(d)];**<br><br>**(2) VIOLATION OF DISCHARGE INJUNCTION [11 U.S.C. § 524(a)(2)];**<br><br>**(3) PERMANENT INJUNCTION [11 U.S.C. § 105(a)];**<br><br>**(4) SLANDER OF TITLE [28 U.S.C. § 1367]; AND**<br><br>**(5) VIOLATIONS OF FAIR DEBT COLLECTION PRACTICES ACT**<br><br>**[15 U.S.C. §§ 1692e, 1692f]**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Tannette Gates ("Plaintiff" or "Debtor"), appearing in pro se, alleges as follows:

## JURISDICTION AND VENUE

1. This adversary proceeding arises in and relates to the above-captioned Chapter 7 case under Title 11 of the United States Code. This Court has jurisdiction under 28 U.S.C. §§ 157 and 1334, and General Order No. 13-05 of the United States District Court for the Central District of California.

2. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (I), (K), and (O), including a proceeding to determine the validity, extent, and priority of a lien, and a proceeding to enforce the discharge injunction. The claim for slander of title is brought under this Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367, as it forms part of the same case or controversy. The claim for violation of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692e and 1692f, is brought under this Court's federal-question jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1334(b), as the claim arises out of conduct directly related to the bankruptcy case (the post-discharge collection of obligations for which personal liability was discharged) and forms part of the same case or controversy as the discharge-violation claims.

3. This proceeding is brought pursuant to Federal Rules of Bankruptcy Procedure 7001(2) (to determine the validity, priority, or extent of a lien) and 7001(7) (to obtain injunctive relief).

4. Venue is proper in this Court under 28 U.S.C. § 1409(a) because this adversary proceeding arises in and relates to a case under Title 11 pending in this district.

5. Plaintiff consents to the entry of final orders and judgment by this Court.

## THE PARTIES

6. Plaintiff Tannette Gates is the debtor in the above-captioned Chapter 7 case and the owner of the real property located at 5510 Owensmouth Avenue, Unit 122, Woodland Hills, California 91367 (the "Property").

COMPLAINT FOR (1) DECLARATORY JUDGMENT THAT LIEN IS VOID
[11 U.S.C. § 506(d)]; (2) VIOLATION OF DISCHARGE INJUNCTION

7. Defendant Warner Center Condominiums ("WCC") is, and at all relevant times was, a California nonprofit mutual benefit corporation operating as the homeowners association for the common interest development in which the Property is located. WCC was scheduled as a creditor in Plaintiff's Chapter 7 case.

8. Defendant Ross Morgan & Company, Inc. ("Ross Morgan") is, and at all relevant times was, a California corporation acting as the managing agent for WCC, and acting on WCC's behalf in the collection conduct alleged herein.

9. Defendant Beaumont Tashjian is a law firm that serves as counsel for WCC and that directed and participated in the collection conduct alleged herein. Plaintiff is informed and believes that Beaumont Tashjian is a business entity organized under California law in a form not currently known to Plaintiff after reasonable inquiry. Plaintiff will seek leave to amend this Complaint to reflect Beaumont Tashjian's correct entity form once ascertained.

10. Defendant Witkin & Neal, Inc. ("Witkin & Neal") is, and at all relevant times was, a California corporation designated as the foreclosure agent in the Notice of Default described herein. Witkin & Neal expressly self-identifies in the Notice of Default as a debt collector under the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692–1692p: "Witkin & Neal, Inc. is attempting to collect a debt and any information we obtain will be used for that purpose. This communication is from a debt collector."

11. Defendant Professional Lien Services, LLC ("PLS") is, and at all relevant times was, a California limited liability company doing business in California with its principal place of business at 15315 Magnolia Boulevard, Suite 212, Sherman Oaks, California 91403. PLS acted as WCC's collection agent in the issuance of the January 20, 2021 pre-lien notice and in the recordation of the 2021 Lien. The January 20, 2021 pre-lien notice expressly self-identifies PLS as a debt collector under the Fair Debt Collection Practices Act: "Professional Lien Services, LLC a Limited Liability Company, is attempting to collect a debt from you on behalf of Warner Center Condominiums."

COMPLAINT FOR (1) DECLARATORY JUDGMENT THAT LIEN IS VOID
[11 U.S.C. § 506(d)]; (2) VIOLATION OF DISCHARGE INJUNCTION

12.     Defendants DOES 1 through 10, inclusive, are persons or entities whose true names and capacities are unknown to Plaintiff, who therefore sues them by such fictitious names. Plaintiff will seek leave to amend this Complaint to allege their true names and capacities when ascertained. Plaintiff is informed and believes that each fictitiously named Defendant is responsible in some manner for the conduct alleged herein.

13.     Plaintiff is informed and believes, and on that basis alleges, that at all relevant times each Defendant was the agent, employee, representative, or co-participant of each other Defendant, and in doing the acts alleged herein was acting within the course and scope of that relationship and with the knowledge, consent, or ratification of the other Defendants. WCC, Ross Morgan, Beaumont Tashjian, Witkin & Neal, and PLS are referred to collectively as "Defendants." Within each Claim for Relief alleged below, references to "Defendants" refer only to those Defendants named in the caption of that Claim.

<strong>GENERAL ALLEGATIONS</strong>

**A.     The Recorded Assessment Lien Secures Only $3,820.96.**

14.     On March 10, 2021, WCC caused to be recorded in the Official Records of Los Angeles County a Notice of Delinquent Assessment, as Instrument No. 20210392043 (the "2021 Lien"), against the Property. A true and correct copy of the 2021 Lien is attached hereto as Exhibit D and incorporated by reference.

15.     As this Court found in its order entered September 23, 2024 in Plaintiff's prior Chapter 7 case, No. 1:24-bk-10773-VK [Doc. 31 therein], the 2021 Lien "states that, as of March 8, 2021, Debtor had a delinquent assessment payable to the WCC in the aggregate amount of $3,820.96." The 2021 Lien thus secures, on its face, the sum of $3,820.96 and no more.

16.     In its opposition filed September 12, 2024 in the prior case [Doc. 29 therein], WCC, through its counsel, judicially admitted that the 2021 Lien secured $3,820.96 as of March 8, 2021, that "the Debtor has made some payments since the recording of the [2021

4

Lien]," and that "the approximate current balance is approximately $6,190.26" as of September 11, 2024.

**B.      The Discharge.**

17.      Plaintiff filed the above-captioned Chapter 7 petition on July 11, 2025. WCC was scheduled as a creditor and received notice of the case through the Bankruptcy Noticing Center.

18.      WCC did not file a proof of claim, did not appear in the case, did not seek relief from the automatic stay, did not seek a determination that any debt was nondischargeable, and did not enter into any reaffirmation agreement with Plaintiff pursuant to 11 U.S.C. § 524(c). No exception under 11 U.S.C. § 523 applies to any debt owed by Plaintiff to WCC, and Plaintiff's pre-petition personal obligations to WCC were fully discharged on October 14, 2025.

19.      On October 14, 2025, this Court entered an Order of Discharge in favor of Plaintiff [Doc. 15] (the "Discharge"). By operation of 11 U.S.C. § 524(a)(2), the Discharge operates as a permanent injunction against any act to collect, recover, or offset any such debt as a personal liability of the Debtor. The case was closed on November 21, 2025 [Doc. 19] and reopened by order entered May 27, 2026 [Doc. 23].

20.      Plaintiff's personal obligation to pay WCC assessments arose, at the latest, when she took title to the Property, and constituted a pre-petition claim. See *Goudelock v. Sixty-01 Ass'n of Apartment Owners*, 895 F.3d 633, 638 (9th Cir. 2018). Although Goudelock arose in a Chapter 13 context, the principle that an HOA assessment obligation arises at the time the homeowner takes title applies equally in Chapter 7. The Ninth Circuit's reasoning — that the obligation is created when the property is purchased under the CC&Rs, with subsequent assessments constituting unmatured or contingent components of the same debt — does not depend on the chapter of bankruptcy. All assessments and related charges that accrued before entry of the Discharge were discharged as personal obligations of Plaintiff.

COMPLAINT FOR (1) DECLARATORY JUDGMENT THAT LIEN IS VOID
[11 U.S.C. § 506(d)]; (2) VIOLATION OF DISCHARGE INJUNCTION

**C.      The Post-Discharge Foreclosure Conduct.**

21.      On April 27, 2026 — more than six months after entry of the Discharge — WCC caused to be recorded against the Property a Notice of Default and Election to Sell Under Homeowners Association Lien, as Instrument No. 20260295338 in the Official Records of Los Angeles County (the "Notice of Default"). The Notice of Default demands a cure amount of $18,139.24. A true and correct copy of the Notice of Default is attached hereto as Exhibit A and incorporated by reference.

22.      The $18,139.24 demanded in the Notice of Default exceeds the $3,820.96 secured by the 2021 Lien by approximately $14,318.28. The excess consists predominantly of pre-petition assessments and related charges for which the personal liability of Plaintiff was discharged by the Discharge. The $14,318.28 excess consists of charges that are not secured by any recorded notice of delinquent assessment. To the extent the excess represents pre-petition assessments accruing after the recordation of the 2021 Lien, the personal obligation for such assessments was discharged on October 14, 2025 by operation of 11 U.S.C. §§ 524(a) and 727. No recorded lien secures the $14,318.28 excess. WCC cannot collect the $14,318.28 *in personam* (because the personal obligation is discharged), and cannot collect it *in rem* against the Property (because no recorded lien secures it).

23.      Plaintiff acknowledges, and does not dispute, the well-established principle that a properly created and validly recorded assessment lien generally survives a Chapter 7 discharge as an *in rem* encumbrance, even though the personal obligation underlying it is discharged. Long v. Bullard, 117 U.S. 617 (1886); Dewsnup v. Timm, 502 U.S. 410 (1992); 11 U.S.C. § 522(c)(2)(B). Plaintiff's claims in this proceeding do not rest on the premise that a valid statutory lien is discharged. Rather, Plaintiff's claims are: (a) that the 2021 Lien is invalid for the reasons set forth herein (including violations of California Civil Code §§ 5660, 5675(e), 5705(b), 5705(c), 5720(b), 5655(a), and the prohibition on continuing-lien claims under Highland Greens Homeowners Ass'n v. De Guillen (In re De Guillen), 604 B.R. 826 (B.A.P. 9th Cir. 2019)) and, to the extent the lien is invalid, it is void under 11 U.S.C. § 506(d); and (b) that Defendants are attempting to collect, *in*

6

COMPLAINT FOR (1) DECLARATORY JUDGMENT THAT LIEN IS VOID
[11 U.S.C. § 506(d)]; (2) VIOLATION OF DISCHARGE INJUNCTION

*personam* and *in rem*, sums far in excess of any amount that could conceivably be secured by any valid lien and that consist predominantly of personal obligations discharged on October 14, 2025, in violation of 11 U.S.C. § 524(a)(2).

24. The Notice of Default identifies Witkin & Neal as the foreclosure trustee and states: "Witkin & Neal, Inc. is attempting to collect a debt and any information we obtain will be used for that purpose. This communication is from a debt collector."

25. On or about May 8, 2026 — eleven (11) days after the Notice of Default was recorded — Defendants issued a document titled "Notice of Board Decision to Foreclose," which was served on Plaintiff on May 16, 2026 at her place of residence. A true and correct copy of the "Notice of Board Decision to Foreclose" is attached hereto as Exhibit B and incorporated by reference. By its own date, the purported board decision to foreclose post-dates the foreclosure already commenced by the recorded Notice of Default.

26. Defendants have also continued to suspend Plaintiff's access card and common-area privileges as a coercive measure in connection with the collection of pre-petition assessments for which personal liability was discharged, and have maintained that suspension after entry of the Discharge.

**D.    The Lien Is Procedurally Defective Under the Davis-Stirling Act.**

27. California law requires strict compliance with the statutory procedures governing the creation and enforcement of common interest development assessment liens. Diamond v. Superior Court, 217 Cal.App.4th 1172, 1190–92 (2013); see Cal. Civ. Code §§ 5660, 5673, 5675, 5705, 5720.

28. Plaintiff is informed and believes, and on that basis alleges, that WCC failed to comply with one or more of the mandatory statutory prerequisites to a valid lien and foreclosure, including: (a) the requirement of a board vote in open meeting to approve recordation of the lien (Cal. Civ. Code § 5673); (b) the requirement to mail a copy of the recorded lien to Plaintiff by certified mail within ten days after recordation (Cal. Civ. Code § 5675(e)); (c) the requirement to offer alternative dispute resolution before initiating foreclosure (Cal. Civ. Code § 5705(b)); and (d) the requirement that the board, and not an

COMPLAINT FOR (1) DECLARATORY JUDGMENT THAT LIEN IS VOID
[11 U.S.C. § 506(d)]; (2) VIOLATION OF DISCHARGE INJUNCTION

agent, approve the decision to foreclose in open meeting by a recorded vote before any foreclosure action (Cal. Civ. Code § 5705(c)).

29.    **Pre-Lien Notice Delivery Failure — Cal. Civ. Code § 5660**. California Civil Code § 5660 required WCC to notify Plaintiff in writing by certified mail of its intent to record a lien at least thirty (30) days before recording the lien. The 2021 Lien was recorded on March 10, 2021. Plaintiff did not receive any pre-lien notice within the operative thirty-day window before that recordation date. Although the bundled package Plaintiff eventually received in mid to late April 2021 contained a pre-lien notice dated January 20, 2021 (a true and correct copy of which is attached hereto as Exhibit E and incorporated by reference), that notice was delivered to Plaintiff for the first time more than thirty (30) days after the 2021 Lien was already recorded — not at least thirty (30) days before recordation as the statute requires. The pre-lien notice requirement of § 5660 was therefore not satisfied as to Plaintiff. Strict compliance with this notice provision is required. *Diamond v. Superior Court*, 217 Cal.App.4th 1172, 1190–92 (2013).

30.    **Recorded Lien Delivery Failure — Cal. Civ. Code § 5675(e)**. California Civil Code § 5675(e) required WCC to mail a copy of the recorded 2021 Lien to Plaintiff by certified mail within ten (10) calendar days after its recordation (i.e., by approximately March 20, 2021). Plaintiff did not receive any copy of the recorded 2021 Lien until mid to late April 2021 — more than thirty (30) days after recordation. The envelope in which Plaintiff eventually received the recorded lien bore the remnants of a partially-torn-off certified mail tracking sticker; the sticker was torn to the point that the words "CERTIFIED MAIL" were not legible; no tracking number was legible; and no certified mail Return Receipt card was attached to the envelope. Plaintiff never signed for receipt of the envelope, and at no time did Plaintiff receive a PS Form 3849 "We ReDeliver For You!" notice from USPS indicating that certified mail had been attempted or was being held for pickup. The certified mail delivery requirement of § 5675(e) was therefore not satisfied as to Plaintiff.

COMPLAINT FOR (1) DECLARATORY JUDGMENT THAT LIEN IS VOID
[11 U.S.C. § 506(d)]; (2) VIOLATION OF DISCHARGE INJUNCTION

31.     On its face, the 2021 Lien expressly asserts a continuing-lien theory: "The property upon which these and other subsequent delinquent assessments and other charges shall constitute a lien is commonly referred to as: 5510 Owensmouth Ave #122 ...." This is precisely the continuing-lien language rejected by the Bankruptcy Appellate Panel in *Highland Greens Homeowners Ass'n v. De Guillen (In re De Guillen)*, 604 B.R. 826, 832–37 (B.A.P. 9th Cir. 2019).

32.     On its face, the 2021 Lien also itemizes the $3,820.96 as consisting of $1,696.00 in "delinquent assessments" and $2,124.96 in "other assessments, interest, late charges, attorney fees (if any), collection fees." California Civil Code § 5720(b) prohibits nonjudicial foreclosure on delinquent regular or special assessments of less than $1,800, "not including any accelerated assessments, late charges, fees and costs of collection, attorney's fees, or interest." The lien's own breakdown shows only $1,696.00 in § 5720-eligible assessments — below the statutory threshold.

33.     The exception to the $1,800 foreclosure threshold provided by California Civil Code § 5720(c)(1) — for "assessments secured by a lien that are more than 12 months delinquent" — does not save the April 27, 2026 Notice of Default. The exception by its plain terms applies only to "assessments secured by a lien." The 2021 Lien on its face itemizes the $3,820.96 secured amount as consisting of $1,696.00 in "delinquent assessments" and $2,124.96 in "other assessments, interest, late charges, attorney fees (if any), collection fees." On the plain text, only the $1,696.00 in "delinquent assessments" qualifies as "assessments secured by a lien" within the meaning of § 5720(c)(1); the remaining $2,124.96 consists of categories that § 5720(b) itself excludes from the assessments measured against the threshold ("accelerated assessments, late charges, fees and costs of collection, attorney's fees, or interest"). Monthly assessments that accrued after the March 10, 2021 recordation of the 2021 Lien are not secured by the 2021 Lien, because the Davis-Stirling Act does not authorize continuing-lien claims absent express authorization in the governing documents, and the WCC CC&Rs do not so authorize. See *Highland Greens Homeowners Ass'n v. De Guillen (In re De Guillen)*, 604 B.R. 826, 832–

COMPLAINT FOR (1) DECLARATORY JUDGMENT THAT LIEN IS VOID
[11 U.S.C. § 506(d)]; (2) VIOLATION OF DISCHARGE INJUNCTION

37 (B.A.P. 9th Cir. 2019). The strict statutory reading therefore confines § 5720(c)(1)'s reach to the $1,696.00 portion — itself below the $1,800 threshold, on which foreclosure remains barred by § 5720(b). Even under the broadest possible alternative reading — that § 5720(c)(1), once triggered, permits foreclosure for the entire $3,820.96 face amount of the recorded 2021 Lien — the exception cannot validate foreclosure for the $18,139.24 demanded in the Notice of Default. The $14,318.28 by which the Notice of Default exceeds the $3,820.96 lien face amount remains unsecured by any recorded lien, and § 5720(c)(1) does not authorize nonjudicial foreclosure for amounts not secured by a lien. In addition, § 5720(c)(1) cannot save a lien that is procedurally invalid under California Civil Code §§ 5660 and 5675(e) for the reasons set forth herein. See *Diamond v. Superior Court*, 217 Cal.App.4th 1172, 1190–92 (2013) (strict compliance with statutory notice provisions required to perfect lien). Section 5720(c)(1) accordingly provides Defendants with no path to validate the foreclosure as conducted under any reading.

34.    The Account History Report incorporated into the 2021 Lien shows that WCC charged "Collection Costs" of $200 on October 19, 2020 and $200 on January 20, 2021, with an additional $400 in "Collection Costs" charged on March 8, 2021 (the day the lien was prepared) — $800 in non-assessment fees bundled into the principal of the lien claim in violation of the payment-application rule of California Civil Code § 5655(a), CC&Rs Section 8.2, and *Huntington Continental Townhouse Ass'n v. Miner*, 230 Cal.App.4th 590, 601–02, 605 (2014).

35.    The January 20, 2021 pre-lien notice by PLS on behalf of WCC threatens recordation of a lien if Plaintiff failed to pay within "thirty (30) days after receipt of this letter," yet simultaneously included an FDCPA validation notice giving Plaintiff thirty days to dispute the debt. Under *Mashiri v. Epsten Grinnell & Howell*, 845 F.3d 984, 988, 993 (9th Cir. 2017), an HOA pre-lien notice whose payment-demand timeline overshadows the consumer's 30-day FDCPA validation right violates 15 U.S.C. § 1692g. PLS, as the issuer of the notice and as a self-identified debt collector under the FDCPA, is liable for this violation. WCC, as the principal, is jointly and severally liable for the

COMPLAINT FOR (1) DECLARATORY JUDGMENT THAT LIEN IS VOID
[11 U.S.C. § 506(d)]; (2) VIOLATION OF DISCHARGE INJUNCTION

conduct of its collection agent. The *Mashiri* defect renders the 2021 pre-lien notice procedurally infirm, which is an additional ground for the invalidity of the 2021 Lien process. Plaintiff does not seek FDCPA damages for this 2021 notice violation; the *Mashiri* analysis is offered to demonstrate the procedural defects in the lien-creation chain that Defendants are now invoking post-discharge.

36.     Under the governing Declaration of Covenants, Conditions, and Restrictions for Warner Center Condominiums, recorded April 13, 2005 as Instrument No. 05-848367 (the "CC&Rs"), Section 7.1 provides that an assessment "shall be a continuing lien upon the Condominium against which each such assessment is made, the lien to be effective upon recordation of a Notice of Delinquent Assessment." Section 8.2 further provides that a delinquent assessment "shall be and become a lien on the Condominium against which the assessment is levied when the Association causes to be recorded a Notice of Delinquent Assessment." Each assessment thus becomes a recorded lien only upon recordation of its own Notice of Delinquent Assessment. WCC has recorded only one Notice of Delinquent Assessment — the 2021 Lien securing $3,820.96. No recorded notice secures any subsequent assessment.

### E.     The Pending State Court Action.

37.     Plaintiff is the plaintiff in a separate state court action filed August 3, 2022 in Los Angeles Superior Court, Case No. 22VECV01096 (the "State Action"), against WCC, Ross Morgan, and other parties not named in this adversary proceeding. The State Action is set for trial on September 14, 2026. The claims in the State Action were disclosed in Plaintiff's bankruptcy schedules in both her 2024 Chapter 7 case (No. 1:24-bk-10773-VK) and the present case (No. 1:25-bk-11235-VK). The State Action involves state-law claims arising from pre-petition conduct of WCC, Ross Morgan, and other parties, including claims tied to Plaintiff's status as a unit owner at the Property. A foreclosure completed before resolution of the State Action would render moot or otherwise impair certain claims and remedies in that action that depend on Plaintiff's continued ownership of the Property.

COMPLAINT FOR (1) DECLARATORY JUDGMENT THAT LIEN IS VOID
[11 U.S.C. § 506(d)]; (2) VIOLATION OF DISCHARGE INJUNCTION

## FIRST CLAIM FOR RELIEF

### (Declaratory Judgment That the 2021 Lien Is Void — 11 U.S.C. § 506(d))

### (Against WCC and DOES 1–10)

38.    Plaintiff realleges and incorporates by reference paragraphs 1 through 37 as though fully set forth herein.

39.    Under 11 U.S.C. § 506(d), to the extent a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void.

40.    A homeowners association assessment lien under the Davis-Stirling Act secures only the amount itemized in the recorded notice of delinquent assessment, and does not constitute a continuing lien securing future assessments unless the governing documents expressly so provide. *Highland Greens Homeowners Ass'n v. De Guillen (In re De Guillen)*, 604 B.R. 826, 832–37 (B.A.P. 9th Cir. 2019). The CC&Rs here do not create a continuing lien securing future assessments; rather, they provide that each assessment becomes a lien only upon recordation of a notice of delinquent assessment for that assessment.

41.    The 2021 Lien secures, at most, the $3,820.96 itemized in the recorded notice. To the extent WCC contends the 2021 Lien secures any greater amount — including the $18,139.24 demanded in the Notice of Default — the lien is void under § 506(d) because no allowed secured claim supports any amount beyond $3,820.96.

42.    Further, the underlying claim is not an allowed secured claim because the 2021 Lien is procedurally defective under the Davis-Stirling Act, as alleged above, and because no recorded lien secures any amount beyond $3,820.96, the lien expressly asserts a continuing-lien theory rejected by De Guillen, and the lien's itemization shows only $1,696.00 in § 5720-eligible assessments — below the $1,800 statutory threshold for nonjudicial foreclosure.

43.    An actual controversy exists between Plaintiff and WCC concerning the validity and extent of the 2021 Lien. Plaintiff is entitled to a declaratory judgment that the

COMPLAINT FOR (1) DECLARATORY JUDGMENT THAT LIEN IS VOID
[11 U.S.C. § 506(d)]; (2) VIOLATION OF DISCHARGE INJUNCTION

2021 Lien is void under 11 U.S.C. § 506(d), and to an order directing that the 2021 Lien and the Notice of Default be removed from the Official Records of Los Angeles County.

## SECOND CLAIM FOR RELIEF

### (Violation of the Discharge Injunction — 11 U.S.C. § 524(a)(2))

### (Against WCC, Ross Morgan, Beaumont Tashjian, Witkin & Neal, and DOES 1–10)

44.    Plaintiff realleges and incorporates by reference paragraphs 1 through 43 as though fully set forth herein.

45.    The Discharge entered October 14, 2025 operates as a permanent injunction under 11 U.S.C. § 524(a)(2) against any act to collect, recover, or offset any such debt as a personal liability of Plaintiff.

46.    The Defendants named in this Second Claim — WCC, Ross Morgan, Beaumont Tashjian, Witkin & Neal, and DOES 1–10 — had actual knowledge of the Discharge. Each such Defendant nonetheless engaged in acts to collect, as a personal liability of Plaintiff, obligations discharged by the October 14, 2025 Order, including recording the Notice of Default demanding $18,139.24, issuing and serving the May 8, 2026 "Notice of Board Decision to Foreclose," sending the April 28, 2026 letter from Beaumont Tashjian to Plaintiff demanding payment and confirming the foreclosure (a true and correct copy of which is attached hereto as Exhibit C and incorporated by reference), maintaining the coercive suspension of Plaintiff's access privileges, and continuing collection communications.

47.    There is no fair ground of doubt as to whether the Discharge barred Defendants' conduct. *Taggart v. Lorenzen*, 139 S. Ct. 1795, 1799 (2019). WCC was represented by sophisticated bankruptcy counsel, received notice of the case, and chose not to file a proof of claim, seek relief from stay, or seek a determination of nondischargeability. The amount demanded exceeds the recorded lien by approximately $14,318.28 — a sum WCC's own counsel previously acknowledged did not exist as of September 2024. The April 28, 2026 letter from Beaumont Tashjian (Exhibit C hereto) further demonstrates Defendants' conscious knowledge of the bankruptcy and Discharge

13

and their decision to proceed with collection notwithstanding. WCC had actual knowledge of the limited scope of the 2021 Lien by virtue of this Court's order entered September 23, 2024 in Plaintiff's prior Chapter 7 case [Doc. 31 therein, Case No. 1:24-bk-10773-VK], which expressly found that the 2021 Lien secured only $3,820.96 — and did not secure any continuing balance accruing after the lien's recordation. WCC also had actual knowledge of the Discharge entered October 14, 2025 in the present case. Despite this actual knowledge, WCC waited more than five years after recording the 2021 Lien, and more than six months after entry of the Discharge, before initiating the nonjudicial foreclosure by recording the Notice of Default on April 27, 2026. This calculated timing — deliberately deferring foreclosure until after the bankruptcy case was closed — confirms that Defendants made a strategic choice to attempt to evade the discharge injunction rather than a good-faith mistake. No objectively reasonable basis exists for Defendants' belief that their conduct was lawful.

48. Defendants' attempted enforcement of an invalid lien to collect personal obligations discharged by the October 14, 2025 Order violates the discharge injunction. *Freeman v. Nationstar Mortgage LLC (In re Freeman)*, 608 B.R. 228, 234–39 (B.A.P. 9th Cir. 2019).

49. Plaintiff has been damaged by Defendants' violations of the discharge injunction and is entitled to compensatory damages, costs, and, in light of the willful and egregious nature of the conduct, punitive damages, pursuant to 11 U.S.C. § 105(a). See *Ocwen Loan Servicing, LLC v. Marino (In re Marino)*, 577 B.R. 772, 787–89 (B.A.P. 9th Cir. 2017), *aff'd* in part on other grounds, 949 F.3d 483 (9th Cir. 2020), *cert. denied*, 141 S. Ct. 1683 (2021); *Parker v. Bayside Court Owners Ass'n (In re Parker)*, 2021 U.S. Dist. LEXIS 53663 (N.D. Cal. Mar. 22, 2021).

COMPLAINT FOR (1) DECLARATORY JUDGMENT THAT LIEN IS VOID
[11 U.S.C. § 506(d)]; (2) VIOLATION OF DISCHARGE INJUNCTION

## THIRD CLAIM FOR RELIEF

**(Temporary, Preliminary, and Permanent Injunctive Relief — 11 U.S.C. § 105(a))**

**(Against WCC, Ross Morgan, Beaumont Tashjian, Witkin & Neal, and DOES 1–10)**

50.    Plaintiff realleges and incorporates by reference paragraphs 1 through 49 as though fully set forth herein.

51.    This Court may issue any order necessary or appropriate to carry out the provisions of the Bankruptcy Code, including injunctive relief to enforce the discharge injunction. 11 U.S.C. § 105(a); *Walls v. Wells Fargo Bank, N.A.*, 276 F.3d 502, 507 (9th Cir. 2002).

52.    Unless restrained and enjoined, the Defendants named in this Third Claim — WCC, Ross Morgan, Beaumont Tashjian, Witkin & Neal, and DOES 1–10 — will proceed with the nonjudicial foreclosure of the Property — including recording a Notice of Trustee's Sale as early as on or about July 26, 2026, and conducting a trustee's sale thereafter — to enforce an invalid lien and to collect personal obligations discharged by the October 14, 2025 Order. The threatened sale of Plaintiff's home constitutes immediate and irreparable injury for which there is no adequate remedy at law, because real property is unique.

53.    Plaintiff is likely to succeed on the merits of her claims that the 2021 Lien is void and that Defendants' foreclosure conduct violates the discharge injunction. The balance of equities tips sharply in Plaintiff's favor, as Defendants seek to enforce an invalid lien and to collect amounts to which they have no lawful entitlement — neither *in personam* (because personal liability has been discharged) nor *in rem* (because no valid recorded lien secures the amounts demanded), while Plaintiff faces the loss of her home. The public interest favors enforcement of the discharge injunction and the integrity of the bankruptcy system. See *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008).

54.    Plaintiff is entitled to temporary, preliminary, and permanent injunctive relief restraining Defendants, and each of them, from taking any action to enforce,

COMPLAINT FOR (1) DECLARATORY JUDGMENT THAT LIEN IS VOID
[11 U.S.C. § 506(d)]; (2) VIOLATION OF DISCHARGE INJUNCTION

advance, or complete the foreclosure commenced by the Notice of Default, including recording any Notice of Trustee's Sale or conducting any trustee's sale of the Property, and from any further act to enforce the 2021 Lien or to collect, recover, or offset any personal obligation of Plaintiff discharged by the October 14, 2025 Order.

## FOURTH CLAIM FOR RELIEF

### (Slander of Title — California Law; 28 U.S.C. § 1367)

### (Against WCC and Witkin & Neal)

55.    Plaintiff realleges and incorporates by reference paragraphs 1 through 54 as though fully set forth herein.

56.    By recording the Notice of Default demanding $18,139.24 against the Property — a sum consisting of (a) the $3,820.96 itemized in the recorded 2021 Lien, which lien is invalid for the reasons set forth herein, and (b) approximately $14,318.28 in additional charges not secured by any recorded lien, the personal liability for which was discharged on October 14, 2025 — WCC and Witkin & Neal published a false statement disparaging Plaintiff's title to the Property.

57.    Under California law, the elements of slander of title are (1) a publication, (2) without privilege or justification, (3) falsity, and (4) direct pecuniary loss. *Sumner Hill Homeowners' Ass'n, Inc. v. Rio Mesa Holdings, LLC*, 205 Cal.App.4th 999, 1030 (2012).

58.    The recordation of the Notice of Default was a publication. It was false because the recorded 2021 Lien does not secure $18,139.24, no other recorded lien secures the $14,318.28 excess, and the personal liability for the underlying pre-petition obligations was discharged by this Court's October 14, 2025 Order. It was without privilege or justification because Defendants recorded it with knowledge of the Discharge and in violation of the discharge injunction. The recordation was made maliciously and with reckless disregard for its truth or falsity.

59.    Defendants' recordation of the Notice of Default is not protected by California's litigation privilege under Civil Code § 47(b). The recordation of a notice of default to initiate nonjudicial foreclosure is governed by the qualified, common-interest

16

privilege of Civil Code § 47(c)(1), not the absolute privilege of § 47(b). *Kachlon v. Markowitz*, 168 Cal.App.4th 316, 340–44 (2008). The qualified privilege is defeated by a showing of malice, which Plaintiff has expressly alleged above. Moreover, the qualified privilege under § 2924 and § 47(c)(1) extends only to the foreclosure trustee performing the statutory nonjudicial foreclosure procedures — not to the lien beneficiary or to other parties involved in the underlying collection effort. *Kachlon*, 168 Cal.App.4th at 344–45 (lien beneficiaries are not entitled to § 2924 / § 47(c)(1) privilege protection). WCC, as the lien beneficiary, accordingly has no privilege defense to the slander of title claim, and Witkin & Neal's qualified privilege is defeated by the malice and reckless disregard for truth alleged herein. To the extent the slander of title claim depends on conduct that also violates the federal discharge injunction, federal law preempts any state-law privilege defense that would shield such conduct.

60. As a direct and proximate result, Plaintiff has suffered pecuniary loss, including impairment of the vendibility and value of the Property and the expense of legal proceedings reasonably necessary to remove the doubt cast upon her title. Such expenses are a recognized form of pecuniary damage. *Sumner Hill*, 205 Cal.App.4th at 1032.

61. Defendants' conduct was undertaken with oppression, fraud, or malice, entitling Plaintiff to punitive damages under California Civil Code § 3294.

## FIFTH CLAIM FOR RELIEF

### (Violations of the Fair Debt Collection Practices Act —

### 15 U.S.C. §§ 1692e, 1692f — Against Witkin & Neal)

62. Plaintiff realleges and incorporates by reference paragraphs 1 through 61 as though fully set forth herein.

63. Plaintiff's claims under the Fair Debt Collection Practices Act do not depend on, and are not premised solely on, a violation of the discharge injunction. Each FDCPA violation alleged in this Fifth Claim is independently actionable under the FDCPA without reference to the Discharge entered October 14, 2025. The independent grounds include, without limitation: (a) the 2021 Lien's failure to meet the $1,800 statutory threshold for

17

nonjudicial foreclosure under California Civil Code § 5720(b); (b) the 2021 Lien's invalidity for procedural defects under California Civil Code §§ 5660 and 5675(e) and under *Diamond v. Superior Court*, 217 Cal.App.4th 1172 (2013); (c) the 2021 Lien's reliance on a continuing-lien theory rejected by *Highland Greens Homeowners Ass'n v. De Guillen (In re De Guillen)*, 604 B.R. 826 (B.A.P. 9th Cir. 2019); and (d) Witkin & Neal's false representation that the recorded 2021 Lien secures $18,139.24, when on its face the lien secures only $3,820.96. Where, as here, an FDCPA claim rests on grounds that exist independently of the discharge, *Walls v. Wells Fargo Bank, N.A.*, 276 F.3d 502 (9th Cir. 2002), does not preclude the claim. *Manikan v. Peters & Freedman L.L.P.*, 981 F.3d 712, 717–18 (9th Cir. 2020) (*Walls* does not bar FDCPA claims based on "wholly independent" grounds that do not depend on issuance or enforcement of the discharge order).

64. Witkin & Neal is a "debt collector" within the meaning of 15 U.S.C. § 1692a(6). Witkin & Neal expressly self-identifies as a debt collector in the Notice of Default recorded April 27, 2026: "Witkin & Neal, Inc. is attempting to collect a debt and any information we obtain will be used for that purpose. This communication is from a debt collector."

65. The Notice of Default constitutes a "communication" in connection with the collection of a "debt" within the meaning of 15 U.S.C. §§ 1692a(2) and 1692a(5). The recorded Notice of Default was sent and served on Plaintiff with the May 8, 2026 "Notice of Board Decision to Foreclose," received by Plaintiff on May 16, 2026 at her place of residence.

66. Witkin & Neal violated 15 U.S.C. § 1692e(2)(A) by falsely representing the "character, amount, or legal status" of the debt. The Notice of Default demands $18,139.24 — a sum that (a) exceeds by approximately $14,318.28 the $3,820.96 actually secured by the recorded 2021 Lien, and (b) consists predominantly of pre-petition obligations the personal liability for which was discharged by this Court's October 14, 2025 Order of Discharge, and for which no recorded lien provides any *in rem* security.

COMPLAINT FOR (1) DECLARATORY JUDGMENT THAT LIEN IS VOID
[11 U.S.C. § 506(d)]; (2) VIOLATION OF DISCHARGE INJUNCTION

67.     Witkin & Neal violated 15 U.S.C. § 1692e(5) by threatening to take action that cannot legally be taken — namely, completing a nonjudicial foreclosure on the basis of (a) a sub-statutory-threshold delinquency, the lien itemizing only $1,696.00 in "delinquent assessments" — below the $1,800 threshold required for nonjudicial foreclosure under California Civil Code § 5720(b); (b) a lien procedurally invalid under California Civil Code §§ 5660 and 5675(e) for the reasons set forth above; (c) a lien that on its face asserts a continuing-lien theory rejected by *In re De Guillen*, 604 B.R. 826, 832–37 (B.A.P. 9th Cir. 2019); (d) a cure demand of $18,139.24 that exceeds by approximately $14,318.28 the amount actually secured by the recorded 2021 Lien, with no *in rem* remedy available for the excess; and (e) amounts that Witkin & Neal has no legal right to collect as a personal obligation of Plaintiff, the personal liability for which was discharged on October 14, 2025 by operation of 11 U.S.C. §§ 524(a) and 727.

68.     Witkin & Neal violated 15 U.S.C. § 1692e(10) by using false, deceptive, or misleading representations in connection with collection of the debt, including by failing to disclose that the personal liability for the underlying pre-petition assessments had been discharged on October 14, 2025, by failing to disclose that the recorded lien secures only $3,820.96, and by treating the lien as continuing-and-current when on its face the lien itemizes a fixed historical amount.

69.     Witkin & Neal violated 15 U.S.C. § 1692f by using unfair or unconscionable means to collect the debt, including by attempting to collect amounts not expressly authorized by the agreement creating the debt or permitted by law, in violation of 15 U.S.C. § 1692f(1).

70.     Witkin & Neal violated 15 U.S.C. § 1692f(6) by taking and threatening to take nonjudicial action to effect dispossession of property when (a) there is no present right to possession of the property claimed as collateral through an enforceable security interest, and (b) the property is not subject to a valid security interest in the amount claimed, given the Cal. Civ. Code § 5720(b) prohibition on nonjudicial foreclosure of sub-$1,800 assessment delinquencies.

COMPLAINT FOR (1) DECLARATORY JUDGMENT THAT LIEN IS VOID
[11 U.S.C. § 506(d)]; (2) VIOLATION OF DISCHARGE INJUNCTION

71.    As a direct and proximate result of Witkin & Neal's FDCPA violations, Plaintiff has suffered actual damages, including emotional distress, the expense of these proceedings, and out-of-pocket costs in defending against the unlawful foreclosure. Plaintiff is entitled to actual damages under 15 U.S.C. § 1692k(a)(1), statutory damages of up to $1,000.00 under 15 U.S.C. § 1692k(a)(2)(A), and reasonable attorney's fees and costs under 15 U.S.C. § 1692k(a)(3).

72.    Plaintiff's FDCPA claims are timely. The April 27, 2026 Notice of Default is the operative debt-collection communication. This adversary proceeding is being filed within one year of that date, within the limitations period of 15 U.S.C. § 1692k(d). See *Rotkiske v. Klemm*, 589 U.S. 8 (2019) (FDCPA one-year statute of limitations runs from date of violation).

73.    The bona fide error defense under 15 U.S.C. § 1692k(c) is not available to Witkin & Neal as to the FDCPA violations alleged herein. The Supreme Court has held that the bona fide error defense does not extend to mistakes of law or to legal misinterpretations of the FDCPA or other governing law. *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 604–05 (2010). Witkin & Neal's recordation of a Notice of Default demanding $18,139.24 on a lien that on its face secures only $3,820.96, on assessments that the lien itemizes as only $1,696.00 — below the $1,800 statutory threshold for nonjudicial foreclosure under California Civil Code § 5720(b) — and on a continuing-lien theory rejected by In re De Guillen, constitutes a legal misinterpretation of California Civil Code §§ 5720(b) and (c)(1), of the Davis-Stirling Act's limitation on continuing liens, and of the scope of HOA assessment liens generally. Such legal misinterpretations are not excused by § 1692k(c). *Jerman*, 559 U.S. at 604–05.

COMPLAINT FOR (1) DECLARATORY JUDGMENT THAT LIEN IS VOID
[11 U.S.C. § 506(d)]; (2) VIOLATION OF DISCHARGE INJUNCTION

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

**On the First Claim for Relief:**

1. For a declaratory judgment that the 2021 Lien (Instrument No. 20210392043) is void under 11 U.S.C. § 506(d) to the extent it purports to secure any amount in excess of $3,820.96, and is void in its entirety to the extent the underlying claim is not an allowed secured claim; and for an order directing the Los Angeles County Recorder to remove the 2021 Lien and the Notice of Default (Instrument No. 20260295338) from the Official Records;

**On the Second Claim for Relief:**

2. For a finding that Defendants violated the discharge injunction; for compensatory damages according to proof; for punitive damages; and for costs and attorney's fees pursuant to 11 U.S.C. § 105(a);

**On the Third Claim for Relief:**

3. For temporary, preliminary, and permanent injunctive relief restraining Defendants, and each of them, and all persons in active concert or participation with them, from taking any action to enforce, advance, or complete the foreclosure commenced by the Notice of Default, including recording any Notice of Trustee's Sale or conducting any trustee's sale of the Property, and from any further act to enforce the 2021 Lien or to collect, recover, or offset any personal obligation of Plaintiff discharged by this Court's October 14, 2025 Order;

**On the Fourth Claim for Relief:**

4. For compensatory damages according to proof; for the expense of these proceedings necessary to remove the doubt cast upon Plaintiff's title; and for punitive damages under California Civil Code § 3294;

COMPLAINT FOR (1) DECLARATORY JUDGMENT THAT LIEN IS VOID
[11 U.S.C. § 506(d)]; (2) VIOLATION OF DISCHARGE INJUNCTION

**On the Fifth Claim for Relief:**

5.　　For actual damages under 15 U.S.C. § 1692k(a)(1); statutory damages of up to $1,000.00 against Witkin & Neal under 15 U.S.C. § 1692k(a)(2)(A); and reasonable attorney's fees and costs under 15 U.S.C. § 1692k(a)(3);

**On All Claims for Relief:**

6.　　For costs of suit incurred herein; and

7.　　For such other and further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38, made applicable to this adversary proceeding by Federal Rule of Bankruptcy Procedure 9015, Plaintiff hereby demands a trial by jury on all claims and issues so triable.

Respectfully submitted,

Dated:　June 5, 2026　　　　TANNETTE GATES

By: _____
　　Tannette Gates
　　Plaintiff in Pro Se

22

COMPLAINT FOR (1) DECLARATORY JUDGMENT THAT LIEN IS VOID
[11 U.S.C. § 506(d)]; (2) VIOLATION OF DISCHARGE INJUNCTION

# EXHIBIT A

6

P.O. Box 23159
San Diego, CA 92193-3159

IMPORTANT INFORMATION
ENCLOSED



(11) 970 0000 2265 4423 6

**Mailed On:** 05/08/2026          **Order Number:**      0027803-01    FC
**ClientID:**   Neal_000299        **Reference Number:** A25-07015

Tannette Gates
5510 Owensmouth Ave # 122
Woodland Hills, Los Angeles, CA 91367



 

**This page is part of your document - DO NOT DISCARD**



# 20260295338



**Pages:**
**0003**

**Recorded/Filed in Official Records**
**Recorder's Office, Los Angeles County,**
**California**

**04/27/26 AT 08:00AM**

| | |
|---|---|
| FEES: | 32.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 75.00 |
| PAID: | 107.00 |





**L E A D S H E E T**



202604270180013

00026495539



015922065

**SEQ:**
**01**

**SECURE - 8:00AM**



**THIS FORM IS NOT TO BE DUPLICATED**





E595050

FOR REFERENCE ONLY: 20260295338

RECORDING REQUESTED BY:

**Lawyers Title Insurance Corporation**

AND WHEN RECORDED MAIL TO:

Witkin & Neal, Inc.
5805 Sepulveda Blvd., Suite 670
Sherman Oaks, CA 91411
Telephone: 818-845-8808    Fax: 818-845-8844

---

Order No: LT3672600919          APN: 2146-037-121          T.S. No: A25-07015

NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED
注:本文件包含一个信息摘要
참고사항: 본 첨부 분서에 정보 요약서가 있습니다
NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACIÓN DE ESTE DOCUMENTO
TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP
LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI LIỆU NÀY

## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER
### Notice of Delinquent Assessment and Claim of Lien

## IMPORTANT NOTICE

**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS, IT MAY BE SOLD WITHOUT ANY COURT ACTION and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property. No sale date may be set until approximately 90 days from the date this notice of default may be recorded (which date of recordation appears on this notice).**

**This amount is $18,139.24 as of 4/22/2026 and will increase until your account becomes current.**

**While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your Covenants, Conditions and Restrictions. If you fail to make future payments of your assessments, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the Covenants, Conditions and Restrictions, the Association may insist that you do so in order to reinstate your account in good standing. In addition, the Association may require as a condition to reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.**

**Upon your written request, the Association will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your Association may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than three months after this notice of default is recorded) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).**

**Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor.**

Order No: LTBG2600919     APN: 2146-037-121     T.S. No: A25-07015

To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact: <u>Warner Center Condominiums, c/o Witkin & Neal, Inc., 5805 Sepulveda Blvd, Suite 670, Sherman Oaks, CA 91411, Phone: (818) 845-8808.</u> If you have any questions, you should contact a lawyer or the governmental agency which may have insured your property. Witkin & Neal, Inc. is attempting to collect a debt and any information we obtain will be used for that purpose. This communication is from a debt collector.

Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale, provided the sale is concluded prior to the conclusion of the foreclosure.

### REMEMBER, YOU MAY LOSE LEGAL RIGHTS
### IF YOU DO NOT TAKE PROMPT ACTION.

THIS NOTICE is given pursuant to that certain Notice of Delinquent Assessment and Claim of Lien ("NODA and COL"), naming Tannette Gates, an unmarried woman as owner, recorded on 3/10/2021 as Instrument No. 20210392043 of Official Records in the office of the County Recorder of Los Angeles County, California.

NOTICE IS HEREBY GIVEN: That Witkin & Neal, Inc., is the duly appointed Trustee, successor trustee or substituted trustee under the above-described NODA and COL, dated 3/8/2021, executed by Warner Center Condominiums (Association), to secure assessment obligations in favor of said Association, pursuant to the terms contained in that certain Declaration of Covenants, Conditions and Restrictions recorded on 4/13/2005 as Instrument No. 05-848367, of Official Records in the office of the Recorder of Los Angeles County, California, describing the land therein as more fully described on the above-referenced NODA and COL and that the beneficial interest under said NODA and COL and the obligations secured thereby are presently held by the Association. That a breach of, and default in, the obligations for which said NODA and COL is security has occurred in that the payment(s) have not been made of: homeowner's assessments due from 5/1/2021, and all subsequent assessments, monthly or otherwise, less credits plus late charges, interest, trustee's fees and costs, attorney's fees and Association fees and costs.

That by reason thereof, the present claimant under said NODA and COL has executed and delivered to said duly appointed Trustee, a written Declaration of Default and Demand for Sale, and has deposited with said duly appointed Trustee such NODA and COL and all documents evidencing obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

Dated: 4-22-26

Susan Paquette, Trustee Sales Officer of Witkin and Neal, Inc. as agent for Warner Center Condominiums



# NOTICE OF DEFAULT
## SUMMARY OF KEY INFORMATION

The attached notice of default was sent to **Tannette Gates, an unmarried woman**, in relation to **5510 Owensmouth Avenue, Unit 122, Woodland Hills CA 91367**. This property may be sold to satisfy your obligation and any other obligation secured by the deed of trust or mortgage that is in default. **Tannette Gates, an unmarried woman has**, as described in the notice of default, breached the mortgage or deed of trust on the property described above.

**IMPORTANT NOTICE:    IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS, IT MAY BE SOLD WITHOUT ANY COURT ACTION,** and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property. No sale date may be set until approximately 90 days from the date the attached notice of default may be recorded (which date of recordation appears on the notice).

This amount is **$18,139.24** as of **4/22/2026** and will increase until your account becomes current.

While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage.  If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing.  In addition, the beneficiary or mortgagee may require as a condition to reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay.  You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made.  However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than three months after this notice of default is recorded) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor.

To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:

**Warner Center Condominiums**
**c/o Witkin and Neal, Inc.**
**5805 Sepulveda Blvd, Suite 670**
**Sherman Oaks, Ca 91411**

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan.

Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale, provided the sale is concluded prior to the conclusion of the foreclosure.

Remember, **YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.**

If you would like additional copies of this summary, you may obtain them by calling **818-845-8808**

Civil Code Section 2923.3(c)(2)            (Revised 12/18/12)

# EXHIBIT B



**WITKIN NEAL**
INCORPORATED

May 8, 2026

## "NOTICE OF BOARD DECISION TO FORECLOSE"

To:    Homeowners: Tannette Gates
          Property Address:  5510 Owensmouth Avenue, Unit 122, Woodland Hills
CA 91367

PLEASE TAKE NOTICE that at an executive session of the Warner Center Condominiums, the Board of Directors has voted to foreclose on your property located at the above-referenced property address due to non-payment of regular and/or special assessments and related charges. The exact date and time of any foreclosure sale will be set forth in a document entitled Notice of Sale which will be mailed to you by first class and certified mail at least 20 days before the first scheduled date of sale.

YOU COULD LOSE OWNERSHIP OF YOUR PROPERTY IN A FORECLOSURE ACTION.

TO FIND OUT THE AMOUNT YOU MUST PAY, CONTACT WITKIN & NEAL, INC. IMMEDIATELY.  FAILURE TO CURE YOUR DEFAULT COULD RESULT IN ADDITIONAL COLLECTION FEES AND COSTS CHARGED TO YOU AND YOUR PROPERTY COULD BE SOLD AT A FORECLOSURE SALE.

This notice is given on behalf of the above referenced association.

*Witkin & Neal, Inc. is attempting to collect a debt and any information obtained will be used for that purpose.*

5805 Sepulveda Blvd. Suite 670 Sherman Oaks, CA 91411  Telephone: 818-845-8808 Facsimile: 818-845-8844

**This page is part of your document - DO NOT DISCARD**



## 20260295338



**Pages:**
**0003**

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**04/27/26 AT 08:00AM**

| | |
|---|---:|
| FEES: | 32.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 75.00 |
| PAID: | 107.00 |



**L E A D S H E E T**



202604270180013

00026495539



015922065

**SEQ:**
**01**

SECURE - 8:00AM



**THIS FORM IS NOT TO BE DUPLICATED**





FOR REFERENCE ONLY: 20260295338

RECORDING REQUESTED BY:

**Lawyers Title Insurance Corporation**

AND WHEN RECORDED MAIL TO:

Witkin & Neal, Inc.
5805 Sepulveda Blvd., Suite 670
Sherman Oaks, CA 91411
Telephone: 818-845-8808    Fax: 818-845-8844

---

Order No: LTSG2LEO0919          APN: 2146-037-121          T.S. No: A25-07015

NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED
注:本文件包含一个信息摘要
참고사항: 본 첨부 문서에 정보 요약서가 있습니다
NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACIÓN DE ESTE DOCUMENTO
TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP
LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI LIỆU NÀY

## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER
### Notice of Delinquent Assessment and Claim of Lien

### IMPORTANT NOTICE

**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS, IT MAY BE SOLD WITHOUT ANY COURT ACTION** and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property. No sale date may be set until approximately 90 days from the date this notice of default may be recorded (which date of recordation appears on this notice).

This amount is **$18,139.24** as of <u>4/22/2026</u> and will increase until your account becomes current.

While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your Covenants, Conditions and Restrictions. If you fail to make future payments of your assessments, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the Covenants, Conditions and Restrictions, the Association may insist that you do so in order to reinstate your account in good standing. In addition, the Association may require as a condition to reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the Association will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your Association may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than three months after this notice of default is recorded) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor.

Order No: LTBG26009919          APN: 2146-037-121          T.S. No: A25-07015

To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact: Warner Center Condominiums, c/o Witkin & Neal, Inc., 5805 Sepulveda Blvd, Suite 670, Sherman Oaks, CA 91411, Phone: (818) 845-8808. If you have any questions, you should contact a lawyer or the governmental agency which may have insured your property. Witkin & Neal, Inc. is attempting to collect a debt and any information we obtain will be used for that purpose. This communication is from a debt collector.

Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale, provided the sale is concluded prior to the conclusion of the foreclosure.

## REMEMBER, YOU MAY LOSE LEGAL RIGHTS
## IF YOU DO NOT TAKE PROMPT ACTION.

THIS NOTICE is given pursuant to that certain Notice of Delinquent Assessment and Claim of Lien ("NODA and COL"), naming Tannette Gates, an unmarried woman as owner, recorded on 3/10/2021 as Instrument No. 20210392043 of Official Records in the office of the County Recorder of Los Angeles County, California.

NOTICE IS HEREBY GIVEN: That Witkin & Neal, Inc., is the duly appointed Trustee, successor trustee or substituted trustee under the above-described NODA and COL, dated 3/8/2021, executed by Warner Center Condominiums (Association), to secure assessment obligations in favor of said Association, pursuant to the terms contained in that certain Declaration of Covenants, Conditions and Restrictions recorded on 4/13/2005 as Instrument No. 05-848367, of Official Records in the office of the Recorder of Los Angeles County, California, describing the land therein as more fully described on the above-referenced NODA and COL and that the beneficial interest under said NODA and COL and the obligations secured thereby are presently held by the Association. That a breach of, and default in, the obligations for which said NODA and COL is security has occurred in that the payment(s) have not been made of: homeowner's assessments due from 5/1/2021, and all subsequent assessments, monthly or otherwise, less credits plus late charges, interest, trustee's fees and costs, attorney's fees and Association fees and costs.

That by reason thereof, the present claimant under said NODA and COL has executed and delivered to said duly appointed Trustee, a written Declaration of Default and Demand for Sale, and has deposited with said duly appointed Trustee such NODA and COL and all documents evidencing obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

_Susan Paquette_                     Dated: 4-22-26

Susan Paquette, Trustee Sales Officer of Witkin and Neal, Inc. as agent for Warner Center Condominiums

## NOTICE OF DEFAULT
## SUMMARY OF KEY INFORMATION

The attached notice of default was sent to **Tannette Gates, an unmarried woman, in relation to 5510 Owensmouth Avenue, Unit 122, Woodland Hills CA 91367**. This property may be sold to satisfy your obligation and any other obligation secured by the deed of trust or mortgage that is in default. **Tannette Gates, an unmarried woman** has, as described in the notice of default, breached the mortgage or deed of trust on the property described above.

**IMPORTANT NOTICE:   IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS, IT MAY BE SOLD WITHOUT ANY COURT ACTION,** and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property. No sale date may be set until approximately 90 days from the date the attached notice of default may be recorded (which date of recordation appears on the notice).

This amount is **$18,139.24** as of **4/22/2026** and will increase until your account becomes current.

While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the beneficiary or mortgagee may require as a condition to reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than three months after this notice of default is recorded) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor.

To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:

**Warner Center Condominiums
c/o Witkin and Neal, Inc.
5805 Sepulveda Blvd, Suite 670
Sherman Oaks, Ca 91411**

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan.

Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale, provided the sale is concluded prior to the conclusion of the foreclosure.

Remember, **YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.**

If you would like additional copies of this summary, you may obtain them by calling **818-845-8808**

Civil Code Section 2923.3(c)(2)            (Revised 12/18/12)

# 違約通知
# 關鍵信息摘要

本文中包含有關 5510 Owensmouth Avenue, Unit 122, Woodland Hills CA 91367 的違約通知發送給 Tannette Gates, an unmarried woman.

該房產可能被出售, 以履行你的產權契約, 抵押貸款及所應承擔的任何其它義務。

Tannette Gates, an unmarried woman重要注意事項: 如果你的房產因為你逾期未付款而進入法拍程序, 可能不經任何法庭行動而被出售。你可能有權利在法律允許的恢復賬戶時間內, 支付你所有的逾期款項, 加上應付的成本和費用, 使你的帳戶保持良好信譽。

時間通常是確定你財產出售日期的五個工作日之前。法拍日期要到本文中包含的違約通知被記錄在案(記錄日期出現在通知上)之後的90天, 才可能確定。

這一金額在 $18,139.24 時為 , 並會增加, 直到你的帳戶回歸正常。

當你的房產進入法拍程序, 你仍須支付應付票據和產權契約或抵押貸款的其它付款義務(如保險費和稅金)。如果你沒有支付接下來的貸款, 房地產稅, 或財產保險及其它應付票據和產權契約或抵押貸款所要求的付款義務, 受益人或抵押權人可以堅持要求你履行這些義務, 以恢復你的帳戶信譽。此外, 受益人或抵押權人可以以恢復你的帳戶為條件, 要求你提供已經付清需優先處理的放置在你產權上的債務, 房地產稅及財產保險保費的可靠書面証據。

一旦你書面申請, 受益人或抵押權人會提供給你分類支付的全部帳單金額。雖然要求全額付款, 你可以不用支付賬戶中的全部未付款, 但你必須支付所有已逾期的款項。但是, 你和你的受益人或抵押權人在發布法拍書面通知前(本通知被記錄在案的3個月后), 可以以書面形式相互同意, 其中包括(1)提供更多的時間來轉讓房產及以其它方式糾正違約, 或(2)建立付款時間表以糾正違約, 或兩者兼而有之。

當本通知第一段中提到的時間段到期, 如果法拍未進行, 或者你和你的債權人之間有單獨的書面協議允許更長的時間, 你隻有在支付你債權人所要求的全部金額后, 才有權利停止債權人出售你的房產。

如果要了解必須支付的款項或安排支付以停止法拍, 或者要了解你的房產進入法拍程序的其他原因, 請聯系:

Warner Center Condominiums
c/o Witkin and Neal, Inc.
5805 Sepulveda Blvd, Suite 670
Sherman Oaks, Ca 91411
818-848-8808

如果你有任何疑問, 應咨詢律師及可能為你的貸款提供擔保的政府機構。

盡管事實上你的房產已進入法拍程序, 你可以上市出售你的房產。隻要出售程序在法拍程序結束之前完成即可。

請記住, 如果你不迅速採取行動, 你可能失去法律權利。

如果你想獲得更多的本摘要副本, 請撥打下列電話 818-845-8808。

Notice of Default-Chinese (Revised 3/28/13)

# 채무 불이행 통지서
## 주요 정보 요약

첨부된 채무 불이행 통지서는 **Tannette Gates, an unmarried woman,** 에게 발송되는 것이며, 이는 **5510 Owensmouth Avenue, Unit 122, Woodland Hills CA 91367**에 관한것입니다. 이 부동산은 귀하의 채무 및 신탁 증서나 저당권에 의해 보증된 기타 채무를 이행하기 위해 매각될 수 있습니다. 채무 불이행 통지서에서 설명된 바와 같이, **Tannette Gates, an unmarried woman**는(은) 상기 설명된 부동산의 저당권 또는 신탁 증서를 위반했습니다.

중요 통보: 귀하의 부동산이 체납으로 인해 차압이 진행 중인 경우, 그 부동산은 법원의 판결 없이 매각될 수 있으며, 귀하에게는 모든 미불금과 허용 가능 원가 및 법이 허용하는 시간 내에 계정 복구를 위한 비용을 지불함으로써 귀하의 계정을 완불 상태로 만들 수 있는 법적 권리가 있으며, 이 허용 시간은 보통 영업일로 부동산의 매각 예정일로부터 5일 전입니다. 부동산 매각 날짜는 채무 불이행 통지가 기록되는 날짜(통지서에 기재되어 있음)로부터 약 90일 이내로 정해질 수 없습니다.

이 금액은 **$18,139.24** 현재 **4/22/2026** 이며, 귀하의 계정이 기한 내 지불 상태가 될 때까지 증가할 것입니다.

귀하의 부동산 차압이 진행되는 동안에도 귀하는 신탁 어음 및 증서 또는 저당권에 의해 요구되는 기타 채무(보험, 세금 등)를 지불해야 합니다. 장래 대부금 지불, 부동산에 대한 세금 납부, 부동산에 대한 보험 유지 또는 신탁 어음 및 증서 또는 저당권에 의해 요구되는 기타 채무에 대한 지불을 불이행하는 경우, 신탁수익자나 저당권자는 상기 사항이 이행되지 않으면 귀하의 계정이 완불 상태로 복구될 수 없다고 주장할 수 있습니다. 또한 신탁수익자나 저당권자는 복구의 조건으로 귀하에게 모든 선순위 담보권, 재산세 및 재해 보험료을 지불했다는 확실한 서면 증거를 제공할 것을 요구할 수 있습니다.

서면 요청시, 신탁수익자나 저당권자는 지불되어야 할 전체 금액에 대한 조목별 기재 문서를 제공할 것입니다. 완불을 요구한다 하더라도 귀하는 귀하 계정의 전체 미납 부분을 모두 지불할 필요는 없지만, 지불하는 당시 모든 채무 불이행 금액이 지불되어야 합니다. 그러나, 귀하와 귀하의 신탁수익자 또는 저당권자는 매각 통보의 게시 시점 이전에(이 채무 불이행 통지서가 기록된 후 3개월이 지나기 이전에는 가능하지 않음), (1) 부동산의 양도 또는 다른 방법으로 채무 불이행을 해결할 수 있는 추가적인 시간 제공, 또는 (2) 채무 불이행을 해결하기 위한 지급 일정의 확립, 또는 (1)과 (2)를 함께 수행하는 서면 사전 합의와 같은 해결 방법들이 있습니다.

본 통지서의 첫번째 단락에 나타난 만기일 이후, 차압이 진행되는 채무 또는 귀하와 귀하의 채권자에 의한 별도의 서면 합의에 의해 추가적인 시간이 허용되지 않는 한, 채권자가 요구하는 전체 금액을 지불하는 것이 귀하의 부동산 매각을 저지할 수 있는 유일한 법적 권리입니다. 귀하가 지불해야 할 금액을 알아보시려면, 차압을 중단하기 위한 지불 방법에 대해 합의하시려면 또는 다른 어떤 이유로 인해 귀하의 부동산에 대한 차압이 진행되는 경우, 다음으로 연락하십시오:

**Warner Center Condominiums**
**c/o Witkin and Neal, Inc.**
**5805 Sepulveda Blvd, Suite 670**
**Sherman Oaks, Ca 91411**

질문이 있으신 경우, 변호사 또는 귀하의 대부금을 보증한 정부 기관에 연락하십시오.

귀하의 부동산에 대한 차압이 진행됨에도 불구하고 귀하는 부동산을 매각 처분할 수 있으며, 이때 부동산의 매각은 차압이 완료되기 전에 완료되어야 합니다.

신속히 행동하지 않으시는 경우, 법적 권리를 잃을 수 있는 사실을 명심하시기 바랍니다.

본 요약서의 추가적인 사본을 원하시는 경우, **818-845-8808.** (으)로 전화하시면 보내드립니다.

Notice of Default – Korean (Revised 3/28/13)

## AVISO DE INCUMPLIMIENTO
## RESUMEN DE LA INFORMACIÓN CLAVE

El aviso de incumplimiento adjunto se envió **Tannette Gates, an unmarried woman,** en relación con **5510 Owensmouth Avenue, Unit 122, Woodland Hills CA 91367.** Es posible que esta propiedad sea subastada para cancelar su deuda y cualquier otra obligación garantizada por la escritura de fideicomiso o hipoteca en mora. Tal como se describe en el aviso de incumplimiento, **Tannette Gates, an unmarried woman** ha incumplido los términos de la hipoteca o escritura de fideicomiso relacionadas con la propiedad antes mencionado.

**ADVERTENCIA DE IMPORTANCIA: SI LA PROPIEDAD VA A SER EJECUTADO POR UN ATRASO EN LOS PAGOS, PUEDE VENDERSE SIN NECESIDAD DE ENTABLAR NINGUNA ACCIÓN ANTE LA CORTE,** pero usted tiene el derecho jurídico de regularizar su cuenta mediante el pago de todos los importes atrasados, más los costos y gastos permitidos, dentro del plazo permitido por ley para la regularización de la deuda, que es, por lo general, de cinco días hábiles antes de la fecha fijada para la subasta la propiedad. No se puede fijar una fecha para la subasta hasta aproximadamente 90 días después de la fecha en que se registre el aviso de incumplimiento adjunto (fecha que figura en el aviso).

El importe adeudado es de **$18,139.24** al día **4/22/2026** y aumentará hasta que se ponga al corriente en los pagos.

Mientras se mantenga vigente el procedimiento de ejecución de su propiedad, usted debe pagar otras obligaciones (tales como seguro e impuestos) exigidas en su vale y escritura de fideicomiso o hipoteca. Si no realiza los próximos pagos del préstamo, los impuestos de la propiedad, el seguro de la propiedad u otras obligaciones requeridas por el vale y la escritura de fideicomiso o hipoteca, el beneficiario o acreedor hipotecario pueden insistir en que los pague como condición para regularizar su cuenta. Asimismo, el beneficiario o acreedor hipotecario pueden exigirle, como condición para la regularización, que presente un comprobante confiable por escrito de que ha pagado todos los gravámenes principales, impuestos inmobiliarios y primas del seguro contra riesgos.

Si usted lo solicita por escrito, el beneficiario o acreedor hipotecario le entregarán un resumen por escrito del importe total que debe pagar. Es posible que usted no tenga que pagar la totalidad del monto adeudado de su cuenta, aunque la intimación haya incluido la totalidad de dicho monto, pero sí deberá pagar todos los importes vencidos a la fecha de la realización del pago. Sin embargo, antes de la fecha de publicación del aviso de venta (que no podrá ser menos de tres meses antes de la fecha de registro de este aviso de incumplimiento), usted y su beneficiario o acreedor hipotecario podrán acordar mutuamente por escrito, entre otras cosas: (1) un plazo adicional para subsanar el incumplimiento mediante una transferencia del bien o de otro modo; (2) un programa de pagos para subsanar el incumplimiento; o ambos.

Una vez vencido el plazo mencionado en el primer párrafo del presente aviso, salvo que la obligación que se ejecuta o un acuerdo por escrito separado entre usted y su acreedor permitan un plazo mayor, usted solo tendrá el derecho jurídico de detener la subasta de la propiedad mediante el pago de todo el importe adeudado cuyo pago haya exigido el acreedor.

Para averiguar el importe que debe pagar o coordinar un programa de pagos para suspender la ejecución, o si su propiedad va a ser ejecutada por cualquier otro motivo, comuníquese con:

**Warner Center Condominiums**
**c/o Witkin and Neal, Inc.**
**5805 Sepulveda Blvd, Suite 670**
**Sherman Oaks, Ca 91411**

Si tiene alguna duda, debe consultar a un abogado o a la agencia de gobierno que asegura su préstamo.

Aun cuando ya se haya iniciado el procedimiento de ejecución, usted puede vender su propiedad, siempre que la venta se realice antes de la finalización del procedimiento de ejecución.

Recuerde que, **SI NO TOMA MEDIDAS DE INMEDIATO, ES POSIBLE QUE PIERDA SUS DERECHOS JURÍDICOS.**

Si desea recibir copias adicionales de este resumen, puede llamar al teléfono **818-845-8808**

Notice of Default – Spanish (Revised 3/28/13)

# PABATID NG HINDI PAGKAKABAYAD
## BUOD NG PANGUNAHING IMPORMASYON

Ang nakakalip na notice of default (pabatid ng hindi pagkakabayad) ay ipinadala kay **Tannette Gates, an unmarried woman**, sa may kaugnayan sa **5510 Owensmouth Avenue, Unit 122, Woodland Hills CA 91367**. Ang ari-arian na ito ay maaaring ibenta para masiyahan ang inyong obligasyon at alinmang iba pang obligasyong natibay ng deed of trust (papeles ng panagot sa utang) o isinangla na hindi nabayaran. **Tannette Gates, an unmarried woman** ay, tulad nang inilarawan sa notice of default (pabatid ng hindi pagkakabayad), hindi natupad na isinangla o deed of trust (papeles ng panagot sa utang) sa ari-arian na inilarawan sa itaas.

**MAHALAGANG PAUNAWA: KUNG ANG INYONG ARI-ARIAN AY MAREREMATA SANHI NG INYONG PAGKUKULANG SA MGA KABAYARAN, MAAARI ITONG IBENTA NANG WALANG ANUMANG PAGKILOS MULA KORTE,** at maaaring kayo ay may legal na karapatan na muling maisaayos para maturing na mainam na katayuan ang inyong account sa pamamagitan ng pagbabayad sa lahat ng inyong nakalipas na bayarin at ang mga pinahihntulutan na gastusin at singil sa loob ng panahon na pinahihintulutan ng batas para sa muling pagtatalaga ng inyong account, na karaniwang limang araw ng trabaho bago ang petsang itinakda para sa pagbebenta ng inyong ari-arian. Ang petsa ng pagbebenta ay hindi maaaring ilakda hanggang makalipas ang 90 na araw mula sa petsa na ang pabatid ng hindi pagkakabayad ay maaaring maitala (aling petsa ng muling pagtatala na ipinapakita sa pabatid).

Ang halagang ito ay **$18,139.24** base sa petsang **4/22/2026** at tataas hanggang ang inyong account ay masapanahon.

Habang ang inyong ari-arian ay inireremata, maaari ninyo pa rin bayaran ang iba pang mga obligasyon (tulad ng insurance at mga buwis) na hinihiling ang inyong tala at deed of trust (papeles ng panagot sa utang) o isinangla. Kung kayo ay hindi makapagbayad sa utang, magbayad sa mga buwis sa ari-arian, kumuha ng insurance sa ari-arian, o bayaran ang iba pang mga obligasyon tulad nang hinihiling sa tala o deed of trust (papeles ng panagot sa utang) o isinangla, maaaring pilitin ng benepisyaryo o nag-sangla (nagkaloob ng isinangla) na gawin ninyo ito upang muling maitalaga ang inyong account patungo sa mainam na katayuan. Bilang karagdagan dito, maaaring hilingin bilang kondisyon ng benepisyaryo o nag-sangla para sa muling pagtatalaga, na kayo ay magbigay ng mapagkakatiwalaang nakasulat na katibayan na inyong nabayaran ang mga lumang garantiya, buwis sa ari-arian, at mga hulog sa seguro para sa pinsala.

Sa inyong naibigay na nakasulat na kahilingan, ang benepisyaryo o nag-sangla ay magbibigay sa inyo ng nakasulat na detalyadong listahan ng kabuuang halaga na dapat ninyong bayaran. Maaaring hindi ninyo kailangang bayaran ang kabuuan ng inyong hindi pa bayad na bahagi ng inyong account, kahit na hinihiling ang buong kabayaran, pero kailangan muna ninyong bayaran ang lahat ng mga halaga na nagkukulang ayon sa kasunduan sa panahon na naisagawa ang pagbabayad. Gayunman, kayo at ang inyong benepisyaryo o nag-sangla ay maaaring magkasundo sa pamamagitan ng kasulatan bago ilagay ang abiso ng pagbebenta (na hindi maaaring mas maaga sa tatlong buwan makalipas na matala itong notice of default o abiso ng hindi pagkakabayad) sa, bukod sa iba pang mga bagay, (1) magbigay ng dagdag na panahon kung saan ang kalutasan sa hindi pagtutupad sa napagkasunduan sa pamamagitan ng paglilipat ng ari-arian o sa iba pang paraan; o (2) magtatag ng tipanan ng mga pagbabayad upang malutas ang inyong pagkukulang; o parehong (1) at (2).

Kasunod ng paglipas ng itinakdang panahon na tinutukoy sa unang talaga ng pabatid na ito, maliban kung ang obligasyon sa pagkakaremata o sa hiwalay na nakasulat na kasunduan sa pagitan ninyo at ng inyong creditor ay nagpapahintulot sa isang mas pinatagal na panahon, mayroon lamang kayong legal na karapatan na ihinto ang pagbebenta ng inyong legal na ari-arian sa pamamagitan ng pagbabayad ng buong halagang hinihingi ng inyong creditor.

Upang malaman ang halagang kailangan ninyong bayaran, o para isaayos ang mga pagbabayad para maihinto ang pagkakaremata, o kung ang inyong ari-arian ay maremata sa iba pang kadahilanan, makipag-ugnayan sa:

**Warner Center Condominiums**
**c/o Witkin and Neal, Inc.**
**5805 Sepulveda Blvd, Suite 670**
**Sherman Oaks, Ca 91411**

Kung kayo ay mayroong kahit na anong katanungan, kailangan ninyong makipag-ugnayan sa isang abogado o ahensya ng pamahalaan na maaaring nagkaloob ng insurance sa inyong utang.

Sa kabila ng katotohanan na ang inyong ari-arian ay nireremata, maaari ninyong ihandog na ipagbenta ang inyong ari-arian, sa kundisyon na ang pagbebenta ay natapos bago ang pagtatapos ng pagkakaremata.

Tandaan, **MAAARING MAWALA SA INYO ANG MGA LEGAL NA KARAPATAN KUNG HINDI KAYO KUMILOS KAAGAD.**

Kung nais ninyo ng karagdagang mga kopya ng buod na ito, maaari ninyong makuha ang mga ito sa pamamagitan ng pagtawag sa **818-845-8808**

Notice of Default-Tagalog (Revised 3/28/13)

# EXHIBIT C

## Beaumont Tashjian

*Turning Common Interests Into Common Ground*

File No.:3696

April 28, 2026

<u>Via U.S. Mail RRR and Email</u>
(<u>tgatesrei@gmail.com</u>)

**Tannette Gates**
5510 Owensmouth Avenue, #122
Woodland Hills, CA 91367

RE:  ***WARNER CENTER CONDOMINIUMS***
     *- 5510 Owensmouth Ave, Unit 122*
     *- Response to Records Request*

Dear Ms. Gates:

As you are aware, this office serves as legal counsel to Warner Center Condominiums ("Association"). This letter is in response to your demand to inspect and copy Association records sent to the Association and dated April 13, 2026. Please send any and all responses to this letter to the undersigned's attention at our Agoura Hills address.

Civil Code Section 5210(a) states the following:

"Association records are subject member inspection for the following time periods:

(1) For the current fiscal year and for each of the previous two fiscal years.

(2) Notwithstanding paragraph (1), minutes of member and board meetings of that committee shall be made available commencing January 1, 2007, and shall thereafter be permanently subject to inspection..."

Based on the above provisions, the Association does not presently have any documents responsive to your requests under the applicable provisions of the Civil Code cited by you and as prepared during the current fiscal year or previous two fiscal years. As such, and specifically, the Association provides the following responses as to each of your numbered requests:

1. The Ross Morgan Property Management Agreement was prepared and executed more than two fiscal years ago, so it is not subject to production. However, in a showing of good faith and cooperation, this Agreement is attached herein.

5008 Chesebro Road, Suite 200 • Agoura Hills, CA 91301 • T 866.788.9998 T 818.884.9998 • **HOAattorneys.com**

**Tannette Gates**
April 28, 2026
Page 2

2. There are no documents prepared within the last two fiscal years responsive to the request for documents related to "RM Building and Maintenance, Inc."

3. There are no documents prepared within the last two fiscal years responsive to this request.

4. Pursuant to Civil Code § 5210(a)(2), minutes of Board meetings (other than executive session portions) are permanently subject to inspection. However, the Association is not obligated under Civil Code §§ 5200 or 5205 to review, search, cull, or extract specific minutes containing particular topics or keywords on your behalf. If you elect to request copies of the full set of minutes from this time frame, please confirm in writing your agreement to pay the direct and actual costs of copying and any mailing in advance as authorized by Civil Code § 5205(f), after which the Association will advise you of the exact amount due before proceeding.

*Nothing contained herein or omitted from this letter shall be deemed a waiver of any legal rights or remedies, and the Association expressly reserves all of its rights and remedies.*

Thank you for your expected cooperation.

Very truly yours,

**BEAUMONT TASHJIAN**

LISA A. TASHJIAN, ESQ.

LAT/CRM:mm
cc: Board of Directors
Enclosure



## ROSS MORGAN
## & COMPANY, INC.

Property Management

15315 Magnolia Boulevard, Suite 212
Sherman Oaks, CA 91403
(818) 907-6622
(323) 654-7978
Fax (818) 907-0749

### MANAGEMENT AGREEMENT

THIS MANAGEMENT AGREEMENT ("Agreement") is made and entered into as of January 1, 2009 between ROSS MORGAN AND COMPANY, INC., a California corporation (hereinafter "Agent") and WARNER CENTER CONDOMINIUMS, a California mutual benefit corporation (hereinafter referred to as the "Association").

NOW, THEREFORE, in consideration of the mutual covenants contained herein, the parties hereto agree as follows:

1. **PROPERTY AND PURPOSE.**
The Association hereby engages the Agent as the exclusive agent to manage the business of the Association and the property of the Association, which property consists of 851 units (1,279 at build out) located in Woodland Hills, California (the "Property"). The Agent hereby accepts such engagement and agrees to perform the duties delineated in paragraph 5 below and as further outlined in Exhibit "B", which is attached hereto, incorporated by reference and made part of this Agreement (collectively all duties outlined pursuant hereto shall be defined as the "Work")

2. **TERM OF THE AGREEMENT BREACH.**
The term of this Agreement shall commence on the date first written above and shall continue for a period of one (1) year (the "Contract Period"). Upon the expiration of the initial Contract Period, the term of this Agreement will automatically renew for a period of 12 months and each successive 12-month period thereafter unless terminated pursuant to the following sentence.

Either party hereto may terminate this Agreement by giving the other party written notice of at least thirty (30) days at any time during the contract period.

3. **COMPENSATION.**
   3.1    In consideration for Agent's performance of the work specified below in paragraph 5 hereof, the Association hereby agrees to pay Agent a monthly fee equal to

   . The complex build out fee will not exceed the Phase 7 DRE Budget. Fees will include payroll and all payroll related expenses for a general manager.            and two full time assistants, as well as an on-site maintenance person. Such employees will receive the same benefits afforded all Ross Morgan employees and the cost of such benefits are included in the management fee specified above. The payment referred to above shall be paid to Agent on or before the 1st day of each month in which Agent is to perform the services specified below. The payments due to Agent may be deducted from any funds being held by Agent for the Association when and as they become due.

   3.2    In addition to any consideration due and payable pursuant to paragraph 3.1 above, the Association hereby agrees to pay the Agent for the extra services incurred by the Agent in connection with the performance of its duties hereunder. A description of the extra services    is    attached    hereto    as    Exhibit    "A"    and    incorporated

*"Service, our commitment to you."*
PAGE 1
*Proudly serving our clients since 1982*



herein by this reference.    Any amounts due and payable for extra charges shall be advanced or paid on a monthly basis, at the sole discretion of the Agent.

4.    POWERS.

The Association hereby authorizes the Agent to take any steps and to exercise any powers necessary to perform the work. The Association hereby acknowledges that such powers shall include, but not be limited, to the following:

4.1    The right to hire, discharge and supervise all labor and employees required for the operation and maintenance of the Association and the Property, subject to the approval of the Board of Directors ("Board") of the Association; provided, such employees shall be deemed to be engaged as employees of or on behalf of the Association, not the Agent.

4.2    The right to purchase supplies and pay all bills therefore, subject to paragraph 9 hereof, to contract for electricity, gas, rubbish removal and other services for the Association so longs as not in contravention of the Association's CC&Rs, Bylaws or Rules and Regulations.

5.    THE AGENT'S DUTIES AND RESPONSIBILITIES.

In consideration of the timely payment of the fees and costs referred to in paragraph 3 above, the Agent agrees to perform the following services for the Association and the Association hereby authorizes the Agent to do the following:

5.1    Maintain all of the required financial books and records of the Association required by California Civil Code Section 1365 and generally accepted accounting principles;

5.2    Provide the Board a monthly record of the Association's cash disbursements, including the date upon which such disbursement was made, the amount disbursed and the recipient thereof;

5.3    Provide the Board with a monthly income and expense statement, showing all transactions for such month, and accumulated year-to-date totals;

5.4    Mail regular and special assessments (and any other billings) notices to each unit owner no later than the first day of any month in which they are due;

5.5    Collect all monthly fees, regular and special assessments, document preparation fees and title transfer fees (if any);

5.6    Request, demand, collect and receive any and all charges which may at any time be or become due to the Association and to take such action in the name of the Association by way of legal process or otherwise as may be required for the collection of delinquent fees and regular or special assessments;

5.7    Maintain a permanent accounting history of transactions generated from each unit in the Association;

5.8    Establish and maintain in a bank whose deposits are insured by the Federal Deposit

Insurance Corporation and in a manner to indicate the custodial nature thereof, a bank account or accounts of the Association pursuant to paragraph 9 below.

5.9    Provide the Board with a list each month of the delinquent owners and mail statements to each owner informing him of any such delinquencies including late charges, special charges, and other fixed charges, based on the policies of the Association as identified in the Association's CC&Rs and collection policy;

5.10   Follow up on all delinquencies in accordance with the Association's collection policy and, to the extent permitted by law and with Board approval, record liens on any accounts that are approximately sixty-one (61) days delinquent and engage any attorneys required and assist such attorneys in any legal action in order to collect any delinquent assessments;

5.11   Receive and process all invoices and to timely remit to the vendors any amounts due and owing to them;

5.12   Reconcile all bank statements and provide the Board each month with copies of all bank statements;

5.13   Interact with auditors, providing access to the Association's records authorized by the Board, engage any attorneys and/or accountants required for an audit when necessary, pay such attorneys, accountants and/or auditors on behalf of the Association from the Association's accounts;

5.14   Prepare and disseminate to the Board, prior to the commencement of any fiscal year, a proposed budget for the upcoming fiscal year, the budget data to be compiled by utilizing historical financial data, economic trends, proposed increases by vendors, and any requirements of the individual Association.  Approval and adoption of the budget in writing by the Board will suffice as approval and acceptance of any increase in the monthly management fee of the Agent provided the Board has been provided with 60 days written notice of the pending increase prior to it taking effect.

5.15   Assist the Board in placing certain funds in interest-bearing accounts;

5.16   Open and maintain reserve fund accounts at a federally insured bank pursuant to the written directions of the Board with only Board members as signatories thereto; provided, however, the Agent shall have the right to transfer funds from the Association's reserve account to the Association's operating account with the written approval of two Board members by e-mail or fax.

5.17   Secure bids for required services needed for the maintenance of all common areas of the Association and assist the Board in evaluating all quotes from subcontractors

5.18   Conduct inspections each week of the Association's property along with members of the Board and/or committees of the Board as requested and inspection reports to be provided to the Board on the 2nd and 4th Wednesday of each month.

5.19   Prepare and maintain a list of the owners of units at the Association, including their

addresses and any recorded changes of ownership or requests for a secondary address.

6.    ADMINISTRATIVE DUTIES.
The Agent will cause its representative to attend the two monthly meetings of the Board. The recording of the Minutes at any such meeting will be done by the Association or its Secretary. The Agent will prepare annual meeting notices, agendas, ballots, proxies, sign-in sheets, and will organize and assist in conducting the Association's annual meeting of members.

7.    INSURANCE AND BONDING.
7.1    The Agent hereby warrants and represents the following:

7.1.1    The Agent has comprehensive liability and property damage insurance in the amount of one million dollars;

7.1.2    The Agent has worker's compensation insurance. Said policy covers employees of the Agent only and not those of the Association.

7.1.3    The Agent is presently covered under a fidelity bond;

7.1.4    The Agent will provide the Association with ten (10) days written notice prior to the cancellation of any of the insurance and/or bonds referred to above.

7.2    Association agrees that at all times during the Contract Period and any extension thereof:

7.2.1    The Association shall maintain general liability insurance for the Property and directors and officers' liability insurance in amounts and with such endorsements sufficient to indemnify Association and Agent against claims or suits arising from the operation and management of Association's business including, but not limited to, for damage to property and injury or death of any person, but in no event in an amount less than the minimum amounts required by Civil Code Sections 1365.7 and 1365.9 as the same may be amended from time to time. The Association shall name Agent as additional insured under such policies of insurance and shall provide for a ten (10) day notice to Agent prior to any cancellation thereof.

7.2.2    The Association shall maintain workers compensation in the amounts required by law in the event that the Association has any employees at the Property.

8.    INDEMNIFICATION BY ASSOCIATION AND LIMITATION OF LIABILITY BY AGENT
Association shall indemnify, hold harmless, and defend the Agent, its officers, directors, shareholders, employees, agents and/or affiliates (collectively, "Agent Parties") from and against any liability, claims, losses, lawsuits, damages and expenses (collectively, "claims") asserted against any of the Agent Parties, by demand, suit or otherwise, by any person

(including members of the Board and officers), firm, corporation, government, or governmental entity, including reasonable attorneys' fees, arising out of or in anyway connected with the operation and management of the Property and/or performance of the Agent's services hereunder except where Agent is found to have engaged in willful misconduct, fraud or gross negligence giving rise to such claim.

To the fullest extent permitted by law, the Agent shall not be liable to Association or any officer or director for any act or omission, including but not limited to any act or omission arising from or in connection with this Agreement, except where the Agent is found to have engaged in fraud, willful misconduct or gross negligence. Without in any way limiting the provisions of this section, the parties further acknowledge and agree that the Agent shall not be liable to the Association or any officer or director for any conditions at the Property and/or acts or events, either financial or contractual, which occurred or existed prior to or subsequent to the commencement date of this Agreement.

The provisions of this section shall survive termination of this Agreement by any cause.

9.   OPERATING BANK ACCOUNT(S).
The Agent shall establish and maintain, in a bank whose deposits are insured by Federal Deposit Insurance Corporation and in a manner to indicate the custodial nature thereof, a bank account or accounts as agent of the Association. All receipts of the Association shall be deposited in these accounts and the Agent shall have the authority to draw on such accounts for any payment to be made to discharge all liabilities or obligations incurred pursuant to this Agreement and for the payment of any fees due and owing to the Agent hereunder; provided, however, the Agent shall not expend in excess of Five Hundred Dollars ($500.00) at any one time without the prior approval of the Board except for monthly or recurring expenses and/or emergency repairs, if such emergency repairs, in the sole discretion of the Agent, are necessary to protect the Property from damages. Nothing herein shall be deemed to grant the Agent the right to authorize withdrawals from the Association's operating account(s), except as expressly authorized herein.

10.   DUTIES OF THE ASSOCIATION.
The Association shall furnish to the Agent all of the Association's governing documents and credit files including but not limited to, current financial data necessary for the proper management of the Association. These files shall include copies of the Association's CC&Rs, bylaws, rules and regulations, the current budget and financial statement of the Association, all reconciled cash accounts of the Association, the name and address of each of the owners of units in the Association, a list of all the accounts receivable of the Association, and a list of all the accounts payable of the Association. These records must be turned over to the Agent prior to or on the commencement date of this Agreement.

11.   BINDING ARBITRATION AND ATTORNEYS' FEES.
Any controversy arising out of or relating to this Agreement, or the breach thereof, shall be settled by binding arbitration in accordance with the Rules of the American Arbitration Association. Both parties agree to abide by the terms of the award rendered by the Arbitrator(s), and judgment upon the award may be entered in any Court having jurisdiction thereof. The prevailing party shall be entitled to an award of reasonable attorneys' fees and costs.

PAGE 5

12. DISCLOSURE

RM Building Maintenance, Inc. may provide certain maintenance services for the Association. Ross Morgan does hereby disclose that some of the shareholders of Ross Morgan are also shareholders of RM Building Maintenance, Inc. Professional Lien Services (PLS) may provide certain delinquent assessment collection services, such as certified mailings of Notice of Default and Recording of Liens. The Agent does hereby disclose that some of the shareholders of Ross Morgan are also partners of PLS.

LaBarre-Oksnee Insurance Agency, Inc (LaBarre-Oksnee) has engaged HOA Insurance Services, Inc. ("HOAIS") as a licensed insurance producer. HOAIS is an independent affiliate of Ross Morgan and will be participating in commissions earned if policies are purchased through LaBarre-Oksnee. In the event such a service is provided to the Association, it is hereby disclosed that a relative of the owner/shareholder of HOAIS is a shareholder of Ross Morgan.

13. ESTABLISHMENT OF AGENCY RELATIONSHIP

The parties hereby acknowledge that the Agent is being engaged to act as the agent of the Association and that all acts the Agent takes pursuant to the authority granted herein shall be deemed to be acts for and on behalf of the Association, except where such acts constitute fraud, willful misconduct or gross negligence.

Executed on the date first above written at Sherman Oaks, California.

"THE AGENT"
ROSS MORGAN AND COMPANY, INC.

By: _____
Brian Davidoff, President

"THE ASSOCIATION"
WARNER CENTER CONDOMINIUMS

By: _____
Kevin Price, Vice President

By: _____  12-5-08
James Elliot, Secretary

PAGE 6

## EXHIBIT "A"

### EXTRA SERVICES RATE SCHEDULE

#### Association Charges

| | | |
|---|---|---|
| 1. | Assessment billings | No charge |
| 2. | All postage, including postage for assessment billings | At cost |
| 3. | All printing costs | At cost |
| 4. | Reproduction (in house) per copy | $.15 |
| 5. | Meetings in excess of twice per month | $75.00/per hour |
| 6. | Meetings in excess of four hours | $75.00/additional hour or part of hour |
| 7. | Attendance at Small Claims Court | $250.00/appearance per person |
| 8. | Storage of Records | $75.00/annum |
| 9. | Office Supplies | At Cost |
| 10. | Filing of Forms 1099 and 1096 | $45.00/Form |
| 11. | Special Mailings | $50 / mailing |
| 12. | Transfer Fees charged to seller (no charge to the association) | Prevailing Rates |
| 13. | Prepare for and interact with insurance company in connection with annual Workers Compensation audit | $250.00 per annum |
| 14. | Attendance at Small Claims Mediation, Court Hearings, Arbitration | $250.00 |



**ROSS MORGAN & COMPANY, INC.**

*Property Management*

13315 Magnolia Boulevard, Suite 212
Sherman Oaks, CA 91403
(818) 907-6622
(323) 654-7976
Fax (818) 907-0749

EXHIBIT "B"

November 12, 2008

Marty Golden
The Metropolitan Homeowners Association
Woodland Hills, CA 91367

To Whom It May Concern:

Thank you for giving us the opportunity to provide you with a proposal for the management of ~~THE METROPOLITAN HOMEOWNERS ASSOCIATION~~. WARNER CENTER CONDOMINIUMS.

**AS A FULL SERVICE MANAGEMENT COMPANY WE WILL PROVIDE THE FOLLOWING SERVICES:**

**A. FINANCIAL MANAGEMENT**

1. Assist the Client in the development and preparation of the annual operating budget.

2. Prepare a mailing to owners of the approved budget in accordance with California Civil Code.

3. Prepare and submit to Client a Year To Date Budgeted versus Actual Income and Expense analysis on a monthly basis.

4. Prepare and maintain books and records necessary to produce Financial Statements in accordance with generally accepted accounting practice.

5. Prepare and submit to Client a monthly financial summary of all receipts and disbursements.

6. Receive, review and approve vendor invoices and other bills, and prepare checks for payment and subsequent mailing.

7. Collect all assessments as they become due and payable, and deposit all cash receipts in the Client's bank accounts, maintained at an FDIC insured banking institution.

8. Maintain a record of homeowners dues and receipts, and provide the Client with a monthly delinquency listing. We will send monthly arrear notices as well as notices of default, and record liens against delinquent homeowners.

9. Assist the Client's legal counsel, as necessary, to initiate required legal action consistent with the Association's By-Laws, Covenants, Conditions and Restrictions.

10. Even though we send out monthly billing statements, we offer our members the convenience of automatically making payments for their homeowner's assessments and any special assessments by filling out and faxing the appropriate form.

*"Service, our commitment to you."*
*Proudly serving our clients since 1982*



Case 1:26-ap-01037-VK   Doc 1   Filed 06/05/26   Entered 06/05/26 13:29:39   Desc
Main Document

**B. ADMINISTRATIVE MANAGEMENT**

1. Receive and investigate significant complaints regarding rule violations, and report all such violations to Client for appropriate follow up.

2. Assist and advise the Client in the preparation of general correspondence between residents, owners, contractors, etc. Maintain a file of all Client correspondence received or issued.

3. Assist the Client in procurement of insurance coverage, as well as the processing of insurance claims.

4. Assist the Client in coordinating general membership meetings including the Annual Meeting.

5. Where requested by Client we will attend and provide input for any Board and/or operating committee meeting.

6. We provide our Boards (at no charge) a professionally produced video on the role, duty and responsibility of a Board of Directors, as well as the function and role of each officer. This covers the role of the president, vice president, secretary, treasurer, and member at large. We recognize that Board members are volunteers, many of which have never had any prior experience serving on a Board. Our video solves that problem and gets new Board members, as well as existing ones, up to speed in no time at all, enabling them to effectively serve the needs of their community.

**C. PROPERTY MANAGEMENT**

1. Assist the Client in a competitive bidding process for non-emergency services, and provide input in selection of contractors and in developing contract specifications.

2. Obtain from each contractor relevant certificates of insurance including workers compensation and general liability insurance.

3. Direct contractors providing recurring services and monitor specific contractor performance to ensure substantial compliance with contract specifications.

4. Perform regular site inspections in order to maintain a satisfactory knowledge of the condition of the property and performance of the Client's contractors.

5. Receive service requests for repairs or maintenance of property and report trends in service requests to client.

6. Arrange for prompt and satisfactory response to emergency service requests.

7. Advise Client of major problems or trends in maintenance service requests as they occur.

8. Handle any problem which may arise on a responsive individual basis. Our office hours are 9:00 a.m. to 5:00 p.m. Monday to Friday with after hours emergency service 24 hours per day, 7 days a week.

9. Assist the Client's legal counsel, as necessary, to initiate required legal action consistent with the Association's By-Laws, Covenants, Conditions and Restrictions.

**PRINCIPAL OF ROSS MORGAN & COMPANY, INC.**

**BRIAN M. DAVIDOFF, CMCA, AMS**

Prior to becoming a principal of Ross Morgan & Company, Brian worked in the Audit Department of a large national CPA firm specializing in all aspects of the real estate industry. He was also Controller and Chief Financial Officer of a large property management company. Brian's strong financial background has been a tremendous benefit to his clients, and his professional and "hands-on" approach has enabled him to respond immediately to their needs.

Brian is a licensed real estate broker with the California Department of Real Estate and a member of the Community Association Institute. He is also a Certified Manager of Community Associations and has extensive experience in the management of homeowner associations, including planned unit developments.

The monthly fee for our management services. The monthly fee at build out is not to exceed the Phase 7 DRE Budget. The fee includes payroll and all payroll related expenses for a general manager and two assistants, as well as an on-site maintenance person.

**WHAT A CERTIFIED MANAGEMENT COMPANY MEANS TO YOU**

Only a select few community association management firms in the state have met the criteria for being a Certified Manager of Community Interest Developments. We are proud to say that we are one of the select few. Every community manager must be certified or on the certification track. This represents a higher standard, one that ensures effective community association management performed with the utmost professionalism and ethics. This has, and continues to be our goal and commitment to our clients, and feel confident that we can offer the most professional and innovative services available.

We hope we can be of service to the Association and would be glad to meet with the Board of Directors to discuss in greater detail the scope of our services. Please do not hesitate to contact us if you have questions.

Sincerely,

Brian Davidoff   11/3/08
President

**VISIT OUR WEB SITE AT:
WWW.ROSSMORGANCO.COM**

*Member in good standing of the Better Business Bureau.
They can be reached via their website at www.labbb.org*

# THÔNG BÁO VỀ VIỆC QUÁ HẠN TRẢ NỢ
## BẢN TÓM LƯỢC CÁC THÔNG TIN CHÍNH

Thông báo quá hạn trả nợ kèm theo đây được gửi cho có quan hệ với **Tannette Gates, an unmarried woman,** 5510 Owensmouth Avenue, Unit 122, Woodland Hills CA 91367. Căn nhà này có thể được bán để hoàn trả số tiền nợ của quý vị và bất kỳ khoản nợ nào khác theo khế ước ủy thác hoặc hợp đồng vay thế chấp mua nhà đã quá hạn trả. Như trình bày trong thông báo quá hạn trả nợ, **Tannette Gates, an unmarried woman** đã vi phạm hợp đồng vay thế chấp mua nhà hoặc khế ước ủy thác đối với căn nhà ghi trên.

**THÔNG BÁO QUAN TRỌNG: NẾU CĂN NHÀ CỦA QUÝ VỊ BỊ TỊCH THU THẾ NỢ VÌ QUÝ VỊ KHÔNG TRẢ TIỀN ĐÚNG HẠN, CĂN NHÀ ĐÓ CÓ THỂ ĐƯỢC BÁN MÀ KHÔNG CẦN KIỆN RA TÒA,** và theo luật quý vị có quyền trả nợ đầy đủ cho trương mục của mình bằng cách trả toàn bộ số tiền đã quá hạn trả cộng với các khoản chi phí và phí tổn được phép trong thời gian luật pháp cho phép để khôi phục lại tài khoản của quý vị, thường là năm ngày làm việc trước ngày dự định bán căn nhà của quý vị. Không được thu xếp ngày bán nhà cho tới khoảng 90 ngày kể từ ngày thông báo quá hạn trả nợ kèm theo có thể được lưu hồ sơ (ngày lưu hồ sơ như trên thông báo).

Số tiền này là $18,139.24 tính tới ngày 4/22/2026 và sẽ tăng cho tới khi tài khoản của quý vị được thanh toán đầy đủ.

Trong thời gian căn nhà của quý vị bị tịch thu thế nợ, quý vị vẫn phải trả các khoản tiền khác (ví dụ như bảo hiểm và thuế) theo giấy vay nợ và khế ước ủy thác hoặc hợp đồng vay thế chấp mua nhà của quý vị. Nếu sau này quý vị không tiếp tục trả nợ khoản vay đó, trả thuế cho căn nhà đó, cung cấp bảo hiểm cho căn nhà, hoặc trả các khoản tiền khác theo qui định trong giấy cam kết trả nợ và khế ước ủy thác hoặc hợp đồng vay thế chấp mua nhà, người thụ hưởng hoặc người cho vay thế chấp mua nhà có thể yêu cầu quý vị làm như vậy để phục hồi tài khoản của quý vị. Ngoài ra, người thụ hưởng hoặc bên cho vay thế chấp mua nhà có thể đưa ra điều kiện tái phục hồi, đó là quý vị phải cung cấp chứng từ đáng tin cậy về việc đã trả tất cả các khoản tịch thu thế nợ trước đó, thuế bất động sản, và lệ phí bảo hiểm hiểm nguy.

Sau khi nhận được yêu cầu bằng văn bản của quý vị, người thụ hưởng hoặc người cho vay thế chấp mua nhà sẽ gửi cho quý vị một bản liệt kê chi tiết toàn bộ số tiền mà quý vị phải trả. Quý vị có thể không phải trả toàn bộ phần chưa trả trong trương mục của quý vị, mặc dù phải trả toàn bộ, nhưng phải trả tất cả các khoản tiền đã quá hạn trả nợ vào thời điểm trả tiền. Tuy nhiên, quý vị và người thụ hưởng hoặc bên cho vay thế chấp mua nhà có thể thỏa thuận bằng văn bản trước thời điểm niêm yết thông báo bán (không được sớm hơn ba tháng sau khi thông báo vi phạm hợp đồng này được lưu hồ sơ) để (ngoài các việc khác) (1) gia hạn thêm thời gian khắc phục tình trạng quá hạn trả nợ bằng cách chuyển nhượng căn nhà hoặc theo cách khác; hoặc (2) sắp xếp kế hoạch trả góp để khắc phục tình trạng vi phạm hợp đồng của quý vị; hoặc cả (1) và (2).

Sau khi hết khoảng thời gian được nhắc tới trong đoạn đầu tiên của thông báo này, trừ khi số tiền bị tịch thu thế nợ hoặc có thỏa thuận riêng bằng văn bản giữa quý vị và chủ nợ cho phép gia hạn thêm thời gian, theo luật quý vị chỉ có quyền ngừng việc bán căn nhà của quý vị bằng cách trả toàn bộ số tiền mà chủ nợ yêu cầu.

Để biết số tiền mà quý vị phải trả, hoặc để thu xếp việc trả tiền nhằm ngăn chặn tình trạng tịch thu nhà thế nợ, hoặc nếu căn nhà của quý vị đang bị tịch thu thế nợ vì bất kỳ lý do nào khác, liên lạc:

Warner Center Condominiums
c/o Witkin and Neal, Inc.
5805 Sepulveda Blvd, Suite 670
Sherman Oaks, Ca 91411

Nếu có thắc mắc, quý vị nên liên lạc với một luật sư hoặc cơ quan chính phủ có thể giúp bảo hiểm cho khoản vay của quý vị.

Cho dù căn nhà của quý vị hiện đang bị tịch thu thế nợ của quý vị, quý vị có thể chào bán căn nhà đó, với điều kiện việc bán nhà phải kết thúc trước khi kết thúc thủ tục tịch thu nhà thế nợ.

Xin nhớ, **QUÝ VỊ CÓ THỂ MẤT CÁC QUYỀN HẠN PHÁP LÝ NẾU KHÔNG HÀNH ĐỘNG NGAY.**

Nếu muốn có thêm bản sao của thông báo này, quý vị có thể gọi **818-845-8808**

Notice of Default - Vietnamese          (Revised 12/18/12)

# EXHIBIT D



**This page is part of your document - DO NOT DISCARD**





## 20210392043

**Pages:
0004**

**Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California**

### 03/10/21 AT 08:00AM

| | |
|---|---|
| FEES: | 35.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 75.00 |
| PAID: | 110.00 |



**L E A D S H E E T**



**202103101160038**

**00020073576**



**011931765**

**SEQ:
10**

**SECURE - 8:00AM**



**THIS FORM IS NOT TO BE DUPLICATED**

E08_210310_8█████2

**RECORDING REQUESTED BY**
LAWYERS TITLE

RETURN TO:
**PROFESSIONAL LIEN SERVICES, LLC**
**15315 Magnolia Blvd., Suite 212**
**Sherman Oaks, California 91403**

---

## SPACE ABOVE THIS LINE RESERVED FOR RECORDER'S USE

---

## TITLE(S)

### Notice of Delinquent Assessment

---

### Order: 05943281 ─I D

RECORDING REQUESTED BY
LAWYERS TITLE

RECORDING REQUESTED BY AND MAIL TO:

**PROFESSIONAL LIEN SERVICES, LLC**
15315 Magnolia Blvd., Suite 212
Sherman Oaks, California 91403

OS943281-10   **NOTICE OF DELINQUENT ASSESSMENT**

Space above for Recorder's use

In accordance with California Civil Code Section §5675 and the Declaration of Covenants, Conditions, and Restrictions (CC&R's), for Warner Center Condominiums recorded on 4/13/2005 as Instrument Number 05-848367 in the official records of Los Angeles County, California, the following is recorded as a lien on the property described below:

The property upon which these and other subsequent delinquent assessments and other charges shall constitute a lien is commonly referred to as: 5510 Owensmouth Ave #122, Woodland Hills, CA 91367 and is legally described as: Apn Number 2146-037-121, Lot 3, Unit 313, Tract 44600 as shown on the applicable recorded Tract Map in the records of Los Angeles County, California.

The name(s) of recorded owner(s) thereof: Tannette Gates

The mailing address is: 5510 Owensmouth Ave #122, Woodland Hills, CA 91367

| | |
|---|---|
| Total delinquent assessments from 3/1/2020 through today's date amounts to | $1696.00 |
| Other assessments, interest, late charges, attorney fees (if any), collection fees amounts to | $2124.96 |
| Total amount of delinquency (See attached exhibit "A") | $3820.96 |

An itemization of these charges is attached hereto. Additional monies will accrue under this claim at the rate of claimant's regular monthly or special assessments, plus permissible late charges of 10% per month, cost of assessment lien, reasonable attorney's fees, and interest at the rate of 12% per annum.

Should the Association named herein act to have the lien enforced by non-judicial foreclosure and sale, as provided in Civil Code Section 5700(a), the Trustee authorized to enforce and release the lien shall be Witkin & Neal, Inc. 5805 Sepulveda Blvd #670 Van Nuys, CA 91411, (818) 845-8808.

Dated: March 8 2021

Account Number: 200-0574
3631 Warner Center Condominiums

By: **Warner Center Condominiums**

By:
Josh Spies, Agent-Professional Lien Services, LLC

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document, to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California )
County of Los Angeles ) ss.

On MAR. 8, 2021, before me, SUSAN PAQUETTE, Notary Public, personally appeared Josh Spies, who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity and that his signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.
I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal                                    (seal of Notary)

Signature: _____

SUSAN PAQUETTE
COMM. # 2279913
NOTARY PUBLIC-CALIFORNIA
LOS ANGELES COUNTY
MY COMM. EXP. MAR. 8, 2023

EXHIBIT "A"

## Account History Report
### Warner Center Condominiums

**Tannette Gates**                                                    00200-0574

Community Address:   5510 Owensmouth Avenue #122          Date Settled: Tue Jan 02, 2018
Woodland Hills, CA 91367                                  Unit Type:    01-SA5 - Unit Type 01-SA5 147.34

Mailing Address:   5510 Owensmouth Avenue #122           Last payment date:    Thu Feb 25, 2021
Woodland Hills, CA 91367                                  Last payment amount:        382.00
                                                          Current balance:          3,820.96

| Trans Date | Transaction | Charges | Payments | Balance | Date Billed | Reference | Comments |
|---|---|---|---|---|---|---|---|
| 12/01/2019 | Opening Balance | 360.00 | | 360.00 | | | |
| 12/04/2019 | On-Line Payment | | -360.00 | 0.00 | | 169023741 | On-Line ACH Payment |
| 12/31/2019 | On-Line Payment | | -360.00 | -360.00 | | 170880403 | On-Line ACH Payment |
| 01/01/2020 | Assessments | 382.00 | | 22.00 | | Monthly Charges | Recurring Charges: 01/01/2020 |
| 02/01/2020 | Assessments | 382.00 | | 404.00 | | Monthly Charges | Recurring Charges: 02/01/2020 |
| 02/06/2020 | Check Payment | | -382.00 | 22.00 | | 3007 | Lock Box: 02/06/2020 |
| 03/01/2020 | Assessments | 382.00 | | 404.00 | | Monthly Charges | Recurring Charges: 03/01/2020 |
| 03/01/2020 | Special Assessment | 147.34 | | 551.34 | | Monthly Charges | Recurring Charges: 03/01/2020 |
| 03/16/2020 | Late Charges | 52.93 | | 604.27 | | Late Fee | Late Fee: 03/16/2020 |
| 04/01/2020 | Assessments | 382.00 | | 986.27 | | Monthly Charges | Recurring Charges: 04/01/2020 |
| 04/01/2020 | Special Assessment | 147.34 | | 1,133.61 | | Monthly Charges | Recurring Charges: 04/01/2020 |
| 04/03/2020 | Check Payment | | -382.00 | 751.61 | | 3012 | Lock Box: 04/03/2020 |
| 04/16/2020 | Late Charges | 52.93 | | 804.54 | | Late Fee | Late Fee: 04/16/2020 |
| 05/01/2020 | Assessments | 382.00 | | 1,186.54 | | Monthly Charges | Recurring Charges: 05/01/2020 |
| 05/01/2020 | Special Assessment | 147.34 | | 1,333.88 | | Monthly Charges | Recurring Charges: 05/01/2020 |
| 05/05/2020 | Check Payment | | -382.00 | 951.88 | | 3014 | Lock Box: 05/05/2020 |
| 05/18/2020 | Late Charges | 52.93 | | 1,004.81 | | Late Fee | Late Fee: 05/18/2020 |
| 05/27/2020 | Check Payment | | -382.00 | 622.81 | | 3015 | Lock Box: 05/27/2020 |
| 06/01/2020 | Assessments | 382.00 | | 1,004.81 | | Monthly Charges | Recurring Charges: 06/01/2020 |
| 06/01/2020 | Special Assessment | 147.34 | | 1,152.15 | | Monthly Charges | Recurring Charges: 06/01/2020 |
| 06/05/2020 | Check Payment | | -382.00 | 770.15 | | 3016 | Lock Box: 06/05/2020 |
| 07/01/2020 | Assessments | 382.00 | | 1,152.15 | | Monthly Charges | Recurring Charges: 07/01/2020 |
| 07/01/2020 | Special Assessment | 147.34 | | 1,299.49 | | Monthly Charges | Recurring Charges: 07/01/2020 |
| 07/16/2020 | Late Charges | 52.93 | | 1,352.42 | | Late Fee | Late Fee: 07/16/2020 |
| 08/01/2020 | Assessments | 382.00 | | 1,734.42 | | Monthly Charges | Recurring Charges: 08/01/2020 |
| 08/11/2020 | Check Payment | | -500.00 | 1,234.42 | | 3021 | Lock Box: 08/11/2020 |
| 09/01/2020 | Assessments | 382.00 | | 1,616.42 | | Monthly Charges | Recurring Charges: 09/01/2020 |
| 09/16/2020 | Late Charges | 38.20 | | 1,654.62 | | Late Fee | Late Fee: 09/16/2020 |
| 10/01/2020 | Assessments | 382.00 | | 2,036.62 | | Monthly Charges | Recurring Charges: 10/01/2020 |
| 10/16/2020 | Late Charges | 38.20 | | 2,074.82 | | Late Fee | Late Fee: 10/16/2020 |
| 10/19/2020 | Collection Costs | 200.00 | | 2,274.82 | | Pre-Lien Notice Se | Pre-Lien Notice Sent 10/20/20 |
| 10/27/2020 | Check Payment | | -500.00 | 1,774.82 | | 3022 | Lock Box: 10/27/2020 |
| 11/01/2020 | Assessments | 382.00 | | 2,156.82 | | Monthly Charges | Recurring Charges: 11/01/2020 |
| 11/16/2020 | Late Charges | 38.20 | | 2,195.02 | | Late Fee | Late Fee: 11/16/2020 |
| 11/25/2020 | Checks | | -382.00 | 1,813.02 | | 3024 | Payment. Thank You. |
| 12/01/2020 | Assessments | 382.00 | | 2,195.02 | | Monthly Charges | Recurring Charges: 12/01/2020 |
| 12/16/2020 | Late Charges | 38.20 | | 2,233.22 | | Late Fee | Late Fee: 12/16/2020 |
| 01/01/2021 | Assessments | 382.00 | | 2,615.22 | | Monthly Charges | Recurring Charges: 01/01/2021 |
| 01/19/2021 | Late Charges | 38.20 | | 2,653.42 | | Late Fee | Late Fee: 01/19/2021 |
| 01/20/2021 | Collection Costs | 200.00 | | 2,853.42 | | Pre-Lien Notice Se | Pre-Lien Notice Sent 1/21/21 |
| 02/01/2021 | Assessments | 382.00 | | 3,235.42 | | Monthly Charges | Recurring Charges: 02/01/2021 |
| 02/16/2021 | Late Charges | 38.20 | | 3,273.62 | | Late Fee | Late Fee: 02/16/2021 |
| 02/25/2021 | Check Payment | | -382.00 | 2,891.62 | | 1502 | Lock Box: 02/25/2021 |
| 03/01/2021 | Assessments | 382.00 | | 3,273.62 | | Monthly Charges | Recurring Charges: 03/01/2021 |
| 03/01/2021 | Special Assessment | 147.34 | | 3,420.96 | | Monthly Charges | Recurring Charges: 03/01/2021 |
| 03/08/2021 | Collection Costs | 400.00 | | 3,820.96 | | Lien | Lien filed |

Page 1 of 1

# EXHIBIT E

**PROFESSIONAL LIEN SERVICES, LLC**
15315 Magnolia Blvd. Suite 212
Sherman Oaks, CA 91403
(818) 907-6622

TO:     Tannette Gales                        ACCOUNT NUMBER: 200-0574
5510 Owensmouth Avenue #122
Woodland Hills, CA 91367

**IMPORTANT NOTICE: IF YOUR SEPARATE INTEREST IS
PLACED IN FORECLOSURE BECAUSE YOU ARE BEHIND IN
YOUR ASSESSMENTS, IT MAY BE SOLD WITHOUT COURT
ACTION.**

NOTICE IS HEREBY GIVEN that you are in default for failure to pay certain assessments and other fees to Warner Center Condominiums ("Association") including but not limited to regular monthly assessments relating to the property which is commonly known as: 5510 Owensmouth Avenue #122, Woodland Hills, CA 91367

The total amount due to the Association for the delinquent charges is set forth by the itemized statement of charges enclosed herewith. We have also enclosed a statement setting forth the Association's collection and lien enforcement procedures.

Subject to your rights as stated herein, including, but not limited to, those under the Davis-Stirling Act, Rosenthal Fair Debt Collection Practices Act and the Fair Debt Collection Practices Act, in the event the total amounts set forth above are not paid within forty-five (45) days from the date of this letter or thirty (30) days after receipt of this letter, whichever occurs later (you must pay all future assessments which accrue on the first day of each month after this letter and during the thirty (30) to forty-five (45) day period, as applicable and additional attorneys' fees and costs which may be incurred) the Association intends to have a notice of delinquent assessment ("lien") recorded with the [County] County Recorder against your property/unit in accordance with California law.

If the total amount due is not then paid within thirty (30) days from the date on which a copy of the recorded lien is sent to you, the Association will, at the earliest date allowed by law, commence foreclosure proceedings against your property, either by proceeding with a non-judicial foreclosure, or by filing a lawsuit in the Superior Court and, as part of that action, to seek an award of damages against you, individually. In that event, you may incur additional attorneys' fees, trustee fees, costs, lien fees, etc., and if the amounts are not paid, your property may be sold to satisfy the lien, or the Association may seek to enforce judgment against you personally.

You are hereby notified that you have the right to inspect the Association records pursuant to Section 5205 of the California Civil Code. You have the right to request a meeting with the board as provided under California Civil Code Section 5665 et seq. You have the right to dispute an assessment debt by submitting a written request for dispute resolution to the Association as set forth in Civil Code Section 5900 et seq. You have the right to request alternative dispute resolution with a neutral third party pursuant to Civil Code Section 5925 et seq. before the Association may initiate foreclosure against your separate interest. Binding arbitration shall not be available if the Association intends to initiate a judicial foreclosure. You shall not be liable to pay the charges, interest, and costs of collection, if it is determined the assessment was paid on time to the Association.

The Association offers to participate in dispute resolution with you, as set forth in Civil Code Sections 5670 and 5705(b) and pursuant to the Association's meet and confer program (as provided by Civil Code 5900 et seq.) and alternative dispute resolution with a neutral third party (as provided by Civil Code Section 5925 et seq.)

Please make all payments to the Association in care of this office. The mailing address for overnight payments is 15315 Magnolia Blvd., Suite 212, Sherman Oaks, CA 91403. Any payments you make after the date of this letter may be applied to your account but the collection process will continue until your account is paid in full. If you have any questions or comments concerning the above, please do not hesitate to contact me.

Dated: **January 20, 2021**

**Warner Center Condominiums**

By:  Professional Lien Services, LLC
_____

By:  **Josh Spies, Agent**
     **818 907-6622 ext. 209**
     **josh@rossmorganco.com**

MAILED: Certified Mail
Return Receipt Requested
200-0574  Warner Center Condominiums

# Account History Report
## Warner Center Condominiums

**Tannette Gates**

**00200-0574**

Community Address:  5510 Owensmouth Avenue #122
Woodland Hills, CA 91367

Date Settled: Tue Jan 02, 2018
Unit Type:    01-SA5 - Unit Type 01-SA5 147.34

Mailing Address:  5510 Owensmouth Avenue #122
Woodland Hills, CA 91367

Last payment date:    Wed Nov 25, 2020
Last payment amount:           382.00
Current balance:              3,235.42

| Trans Date | Transaction | Charges | Payments | Balance | Date Billed | Reference | Comments |
|---|---|---|---|---|---|---|---|
| 09/04/2019 | Opening Balance | | 0.00 | 0.00 | | | |
| 10/01/2019 | Assessments | 360.00 | | 360.00 | | Monthly Charges | Recurring Charges: 10/01/2019 |
| 10/04/2019 | On-Line Payment | | -360.00 | 0.00 | | 162730004 | On-Line ACH Payment |
| 11/01/2019 | Assessments | 360.00 | | 360.00 | | Monthly Charges | Recurring Charges: 11/01/2019 |
| 11/06/2019 | On-Line Payment | | -360.00 | 0.00 | | 166198511 | On-Line ACH Payment |
| 12/01/2019 | Assessments | 360.00 | | 360.00 | | Monthly Charges | Recurring Charges: 12/01/2019 |
| 12/04/2019 | On-Line Payment | | -360.00 | 0.00 | | 169023741 | On-Line ACH Payment |
| 12/31/2019 | On-Line Payment | | -360.00 | -360.00 | | 170880403 | On-Line ACH Payment |
| 01/01/2020 | Assessments | 382.00 | | 22.00 | | Monthly Charges | Recurring Charges: 01/01/2020 |
| 02/01/2020 | Assessments | 382.00 | | 404.00 | | Monthly Charges | Recurring Charges: 02/01/2020 |
| 02/06/2020 | Check Payment | | -382.00 | 22.00 | | 3007 | Lock Box: 02/06/2020 |
| 03/01/2020 | Assessments | 382.00 | | 404.00 | | Monthly Charges | Recurring Charges: 03/01/2020 |
| 03/01/2020 | Special Assessment | 147.34 | | 551.34 | | Monthly Charges | Recurring Charges: 03/01/2020 |
| 03/16/2020 | Late Charges | 52.93 | | 604.27 | | Late Fee | Late Fee: 03/16/2020 |
| 04/01/2020 | Assessments | 382.00 | | 986.27 | | Monthly Charges | Recurring Charges: 04/01/2020 |
| 04/01/2020 | Special Assessment | 147.34 | | 1,133.61 | | Monthly Charges | Recurring Charges: 04/01/2020 |
| 04/03/2020 | Check Payment | | -382.00 | 751.61 | | 3012 | Lock Box: 04/03/2020 |
| 04/16/2020 | Late Charges | 52.93 | | 804.54 | | Late Fee | Late Fee: 04/16/2020 |
| 05/01/2020 | Assessments | 382.00 | | 1,186.54 | | Monthly Charges | Recurring Charges: 05/01/2020 |
| 05/01/2020 | Special Assessment | 147.34 | | 1,333.88 | | Monthly Charges | Recurring Charges: 05/01/2020 |
| 05/05/2020 | Check Payment | | -382.00 | 951.88 | | 3014 | Lock Box: 05/05/2020 |
| 05/18/2020 | Late Charges | 52.93 | | 1,004.81 | | Late Fee | Late Fee: 05/18/2020 |
| 05/27/2020 | Check Payment | | -382.00 | 622.81 | | 3015 | Lock Box: 05/27/2020 |
| 06/01/2020 | Assessments | 382.00 | | 1,004.81 | | Monthly Charges | Recurring Charges: 06/01/2020 |
| 06/01/2020 | Special Assessment | 147.34 | | 1,152.15 | | Monthly Charges | Recurring Charges: 06/01/2020 |
| 06/05/2020 | Check Payment | | -382.00 | 770.15 | | 3016 | Lock Box: 06/05/2020 |
| 07/01/2020 | Assessments | 382.00 | | 1,152.15 | | Monthly Charges | Recurring Charges: 07/01/2020 |
| 07/01/2020 | Special Assessment | 147.34 | | 1,299.49 | | Monthly Charges | Recurring Charges: 07/01/2020 |
| 07/16/2020 | Late Charges | 52.93 | | 1,352.42 | | Late Fee | Late Fee: 07/16/2020 |
| 08/01/2020 | Assessments | 382.00 | | 1,734.42 | | Monthly Charges | Recurring Charges: 08/01/2020 |
| 08/11/2020 | Check Payment | | -500.00 | 1,234.42 | | 3021 | Lock Box: 08/11/2020 |
| 09/01/2020 | Assessments | 382.00 | | 1,616.42 | | Monthly Charges | Recurring Charges: 09/01/2020 |
| 09/16/2020 | Late Charges | 38.20 | | 1,654.62 | | Late Fee | Late Fee: 09/16/2020 |
| 10/01/2020 | Assessments | 382.00 | | 2,036.62 | | Monthly Charges | Recurring Charges: 10/01/2020 |
| 10/16/2020 | Late Charges | 38.20 | | 2,074.82 | | Late Fee | Late Fee: 10/16/2020 |
| 10/19/2020 | Collection Costs | 200.00 | | 2,274.82 | | Pre-Lien Notice Se | Pre-Lien Notice Sent 10/20/20 |
| 10/27/2020 | Check Payment | | -500.00 | 1,774.82 | | 3022 | Lock Box: 10/27/2020 |
| 11/01/2020 | Assessments | 382.00 | | 2,156.82 | | Monthly Charges | Recurring Charges: 11/01/2020 |
| 11/16/2020 | Late Charges | 38.20 | | 2,195.02 | | Late Fee | Late Fee: 11/16/2020 |
| 11/25/2020 | Checks | | -382.00 | 1,813.02 | | 3024 | Payment. Thank You. |
| 12/01/2020 | Assessments | 382.00 | | 2,195.02 | | Monthly Charges | Recurring Charges: 12/01/2020 |
| 12/16/2020 | Late Charges | 38.20 | | 2,233.22 | | Late Fee | Late Fee: 12/16/2020 |
| 01/01/2021 | Assessments | 382.00 | | 2,615.22 | | Monthly Charges | Recurring Charges: 01/01/2021 |
| 01/19/2021 | Late Charges | 38.20 | | 2,653.42 | | Late Fee | Late Fee: 01/19/2021 |
| 01/20/2021 | Collection Costs | 200.00 | | 2,853.42 | | Pre-Lien Notice Se | Pre-Lien Notice Sent 1/21/21 |
| 021 | Assessments | 382.00 | | 3,235.42 | | Monthly Charges | Recurring Charges: 02/01/2021 |

Page 1 of 1

# NOTICE

Professional Lien Services, LLC a Limited Liability Company, is attempting to collect a debt from you on behalf of Warner Center Condominiums. The amount of the debt is set forth in this letter and the enclosed document. Unless you dispute the validity of the debt or any portion of the debt within thirty (30) days, Professional Lien Services, LLC, a Limited Liability Company will assume the debt is valid. If you notify Professional Lien Services, LLC, a Limited Liability Company, in writing within thirty (30) days of the date of this letter that the debt or any portion of the debt is in dispute, Professional Lien Services, LLC, a Limited Liability Company, will obtain verification of the debt and will mail a copy of the verification to you via regular first-class mail.

You can contact Professional Lien Services, LLC, a Limited Liability Company, at 15315 Magnolia Blvd., Suite 212, Sherman Oaks, CA 91403 and/or (818) 907-6622, ext. 209.

If within thirty (30) days of your receipt of this letter you send a written request to Professional Lien Services, LLC, a Limited Liability Company, you will be provided with the name and address of the original creditor, if it is different than the current creditor.

If you make a written request disputing the debt, Professional Lien Services, LLC, a Limited Liability Company, will not record the lien described herein until it provides you with the verification of debt.

You should be aware that any information provided to either Professional Lien Services, LLC, a Limited Liability Company or Warner Center Condominiums, may be used to assist in collecting this debt.

If you have questions about the amount you owe, you should contact your creditor, Warner Center Condominiums, through this office.

The State Rosenthal Fair Debt Collection Practices Act and the federal Fair Debt Collection Practices Act require that, except under unusual circumstances, collectors may not contact you before 8:00 a.m. or after 9:00 p.m. They may not harass you by using obscene language. Collectors may not use false or misleading statements to call you at work if they know or have reason to know that you may not receive personal calls at work. For the most part, collectors may not tell another person, other than an attorney or spouse, about your debt. Collectors may contact another person to confirm your location or enforce a judgment. For more information about debt collection activities, you may contact the Federal Trade Commission at (877) FTC-HELP or www.ftc.gov.



# LIEN AND COLLECTION POLICY

# FOR DELINQUENT ASSESSMENTS

This policy is written to provide you with a statement in accordance with California Civil Code Section 5310(a)(6) & (7). The policies and practices of the Association with regard to the collection of delinquent assessments are as follows:

1.    Assessments are due on the *first day* of the month. All other assessments, including Special Assessments, are due and payable on the date specified by the Board at the time they are adopted.

2.    In the event an assessment is not received within fifteen (15) days after it is due, the management company will send a statement to the unit owner reflecting a delinquent balance.

3.    If payment has not been received within forty-five (45) days of the original due date, a notice will be sent to the owner by certified mail, demanding full and immediate payment. The fee for this service is $200.

4.    If payment has not been received within forty-five (45) days in accordance with the notice referenced in item 3, above, a lien will be recorded against the unit. The Lien will be mailed (by certified mail) to the unit owner within ten (10) days after it is recorded. The fee for this service is $400.

5.    In the event full payment is not received within thirty (30) days after the lien is recorded, judicial or non-judicial foreclosure proceedings may be commenced at the discretion of the Board of Directors. The foreclosure will continue until the owner pays all delinquent maintenance assessments, special assessments, late charges and/or interest in the maximum amount permitted by law, lien fees, attorney's fees, attorneys' costs, and any other charges and reasonable costs of collection against the property.

6.    Notwithstanding the above, the Board of Directors, in its sole discretion, may decide to proceed to collect delinquent assessment with the assistance of a collection company in lieu of, or in addition to, proceeding by way of judicial or non-judicial foreclosure.

**B1040 (FORM 1040) (12/24)**

**RECEIVED**

**JUN 05 2026**

CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY:_____ Deputy Clerk

| ADVERSARY PROCEEDING COVER SHEET (Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER (Court Use Only) |
|---|---|

| PLAINTIFFS | DEFENDANTS |
|---|---|
| TANNETTE GATES, an individual | WARNER CENTER CONDOMINIUMS, a California nonprofit mutual benefit corporation, et. al. |

| ATTORNEYS (Firm Name, Address, and Telephone No.) | ATTORNEYS (If Known) |
|---|---|
| Tannette Gates (Plaintiff)      Telephone: (818) 443-8769<br>5510 Owensmouth Ave., #122<br>Woodland Hills, CA 91367 | Unknown |

| PARTY (Check One Box Only) | PARTY (Check One Box Only) |
|---|---|
| ☒ Debtor   ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor   ☐ Other<br>☐ Trustee | ☐ Debtor   ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor   ☒ Other<br>☐ Trustee |

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

Plaintiff Debtor seeks: (1) declaratory judgment that recorded Notice of Delinquent Assessment is void under 11 U.S.C. § 506(d); (2) damages and contempt remedies for violations of the discharge injunction under 11 U.S.C. § 524(a)(2); (3) temporary, preliminary, and permanent injunctive relief under 11 U.S.C. § 105(a); (4) damages for slander of title under California state law; and (5) damages for violations of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692e and 1692f.

**NATURE OF SUIT**

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(a) – Recovery of Money/Property**
☐ 11-Recovery of money/property - §542 turnover of property
☐ 12-Recovery of money/property - §547 preference
☐ 13-Recovery of money/property - §548 fraudulent transfer
☐ 14-Recovery of money/property - other

**FRBP 7001(b) – Validity, Priority or Extent of Lien**
☒[1] 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(c) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(d) – Objection/Revocation of Discharge**
☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(e) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(f) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

(continued next column)

**FRBP 7001(f) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
☐ 65-Dischargeability - other

**FRBP 7001(g) – Injunctive Relief**
☐ 71-Injunctive relief – imposition of stay
☒[2] 72-Injunctive relief – other

**FRBP 7001(h) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(i) Declaratory Judgment**
☐ 91-Declaratory judgment

**FRBP 7001(j) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§78aaa et.seq.
☒[3] 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☒ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☒ Check if a jury trial is demanded in complaint | Demand $ 750,000 |
| Other Relief Sought | |

B1040 (FORM 1040) (12/24)

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>TANNETTE GATES | BANKRUPTCY CASE NO.<br>1:25-bk-11235-VK | |
| DISTRICT IN WHICH CASE IS PENDING<br>CENTRAL DISTRICT | DIVISION OFFICE<br>SAN FERNANDO VALLEY | NAME OF JUDGE<br>VICTORIA S. KAUFMAN |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF | DEFENDANT | ADVERSARY<br>PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF) | | |
| DATE<br><br>June 5, 2026 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br><br>TANNETTE GATES | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.